## Landers, et al. v. Landers, et al.

## Motley, et al. v. Landers, et al.

(Decided December 13, 1912).

## Appeals from Allen Circuit Court.

1. Wills—Construction of—Former Action—Destruction of Records —Judgment—Proof of—Sufficiency of—Res Adjudicata.—In an action by several joint owners against the others to sell a tract of land on the ground of its indivisibility, where the widow of one of the former owners asserts title as the devisee of her husband, who acquired title from one of his brothers who died, and asks for a construction of the brother's will, evidence examined and held to sustain the finding of the chancellor that in an action pending prior to the time the courthouse was burned, the question of the construction of the brother's will was before the court, that her husband was a party to the action and that the court adjudged that her husband took only a defeasible fee in the property devised by the brother, and that this judgment was res judicata as to the questions involved.

2. Dower—Husband and Wife—Defeasible Fee.—The wife is entitled to dower in land in which the husband has a defeasible fee.

3. Husband and Wife—Devisee of the Husband—Dower—Election— Defeasible Fee.—The election of a wife to take under the will of her husband does not prevent her from asserting dower in land in which her husband had only a defeasible fee, and which he had no right to dispose of by will.

4. Defeasible Fee—Waste—Liability of Owner.—The owner of a defeasible fee is not liable for waste at common law, and even if he be liable for damages for equitable waste, a question not decided, he is not liable in the absence of evidence showing that in cutting

the timber he was guilty of a wanton and unconscientious abuse of his rights, or of doing that which a prudent man would not do with his own property.

BRADBURN & BASHAM and J. H. GILLIAM for appellants.

G. D. MILLIKIN and SIMS & RODES for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

These two actions have been consolidated, and will be considered in one opinion.

Isaac Landers died testate in the year 1854, leaving a widow, four daughters and six sons, to-wit: Bryant Landers, John Landers, Samuel Landers, Solomon Landers, Doc Landers and Jacob Landers. After devising all of his property to his wife for life, he directed certain sums of money to be paid to his daughters, and upon the death of his wife, that his land, consisting of about 900 acres, be divided equally between his sons. The widow, Patsey Landers, died in the year 1887.

In the year 1873 John Landers, a son and devisee of Isaac Landers, died testate, unmarried and without issue. By his will he made certain provisions for his brothers and sisters, and directed that his brother Jacob Landers should have no part of his estate. His will, in so far as it affects Bryant Landers, is as follows:

"To Bryant Landers, my brother, I give and bequeath, which is willed to me in my father's will which is one-sixth (1-6) part of all the lands belonging to my father at his death.

"I also give to him one-fifth part of one-sixth part of my father's land which was willed to my brother Solomon Landers now going to the heirs of said Soloman Landers which I bought of John W. Landers one of the heirs of the said Soloman Landers.

"I also give unto the said Bryant Landers my interest in my brother Samuel Landers' estate, is now dead, his interest in his father's land which is one-ninth (1-9) part of said land. If said Bryant Landers dies without heirs then my will is that it be equally divided between all my brothers and sisters of their heirs or descendents, except my brother Jacob Landers, or his heirs or descendants."

In 1910, Bryant Landers died testate and without issue, leaving a widow, Neâlie Landers, who was appointed and qualified as his executrix.

In the first action plaintiff J. E. Landers and others who were Bryant Landers' brothers and sisters and their descendants, sued Nealie Landers, individually and as executrix of Bryant Landers, deceased, to recover the sum of $4,792, the reasonable value of timber which it is alleged Bryant Landers cut and removed from the tract of land consisting of 170 acres, which represented the one-sixth interest of John Landers in the estate of his father, Isaac Landers, and which he devised to Bryant Landers. The petition charges that Bryant Landers took only a defeasible fee in the land in question under and by virtue of John Landers' will, and that having died without issue, the tract in controversy passed to plaintiffs under John Landers' will; that in the division of Isaac Landers' land upon the death of his widow, Patsey Landers, the tract of 170 acres was allotted to Bryant Landers; that he held and occupied it up until his death, and that during his occupancy he unlawfully and without right cut and removed the timber in question. After filing a general demurrer to the petition, which was overruled, Nealie Landers, individually and as executrix, filed an answer pleading that Bryant Landers was the absolute owner of the land in controversy, and that even if he was not, the claim of plaintiffs was barred by the statute of limitations. She further answered that even though Bryant Landers had only a defeasible fee in the land in question, still he had the right to cut and remove the timber from the land, without impeachment for waste.

The second action mentioned in the caption is a suit by Elizabeth Motley and others against L. D. Landers and others to sell a tract of 177 acres of land on the ground that the plaintiffs and defendants were the joint owners thereof, and the land could not be divided without materially impairing its value. It was charged in the petition that Bryant Landers took only a defeasible fee in the land in question, and that he having died without issue, plaintiffs and defendants became vested with the absolute title thereto. In this proceeding Nealie Landers filed a petition and answer, asking to be made a party, and alleging that Bryant Landers was the absolute owner of the property under and by virtue of the will of John Landers, and that she was the absolute owner of the property under and by virtue of the will of Bryant Landers. The allegations of the petition and

answer were denied by reply, and plaintiffs affirmatively pleaded that Bryant Landers had merely a defeasible fee in the property, which was defeated by his dying without issue. Subsequently, Nealie Landers filed an amended answer in which she, without abandoning her claim of absolute ownership, pleaded alternatively that in the event the court should declare that Bryant Landers had only a defeasible fee in the tract in controversy, she individually was entitled to dower in the property, or the cash value thereof out of the proceeds. Plaintiffs pleaded that, having elected to take under her husband's will, and having claimed the property absolutely under and by virtue of his will, she was estopped from claiming dower therein, more than one year having elapsed between the time of probate of her husband's will and her acceptance of its provisions, and the filing of her amended answer.

To her request for a construction of the will of John Landers, and to her claim of absolute ownership, plaintiffs interposed a plea of *res judicata*. They alleged that in the year 18——, a suit was instituted by Bryant Landers and others against J. W. Landers and others, in the Allen Circuit Court, to obtain a construction of the will of Isaac Landers, and also the will of John Landers; that judgment was entered construing both of said wills, and that by the judgment in question it was adjudged that Bryant Landers took only a defeasible fee in the tract in controversy; that pursuant to said judgment, commissioners were appointed to divide and allot the lands of Isaac Landers and John Landers; that division and partition was made by the commissioners, and the tract in controversy, being Lot No. 3 in said division, was allotted to Bryant Landers for and during his natural life, with remainder to the heirs of John Landers, except Jacob Landers, in the event said Bryant Landers died without children; that pursuant to this allotment and division, and the orders of the court, a deed was made by the master commissioner, conveying the tract in question to Bryant Landers upon the terms and conditions above set out, which the said Bryant Landers accepted and put to record, and under which he had ever since held and occupied the land. It was further pleaded that this judgment had never been set aside or reversed, and was in full force and effect, and was conclusive on the parties and all those holding under them. Nealie

Landers denied the allegations of the reply with reference to the plea of *res judicata.*

In the action for waste, plaintiff's petition was dismissed, and they appeal.

In the second suit, the plea of *res judicata,* as to the construction of John Landers' will, was sustained. The court, however, held that Nealie Landers had dower in the 177 acres of land. From that part of the judgment holding that Nealie Landers was entitled to dower, plaintiffs appeal, and from that part of the judgment sustaining the plea of *res judicata,* Nealie Landers prosecutes a cross appeal.

As the determination of the other questions involved depends upon the character of estate Bryant Landers took under the will of his brother, John Landers, we shall first proceed to a consideration of that question. The plea of *res judicata,* if good, dispenses with the necessity for considering the will of John Landers. It appears from the evidence that a few years ago, the courthouse of Allen County was destroyed by fire, and that the records of the circuit clerk's office, including the papers in the suit of Bryant Landers and others v. I. W. Landers and others, in which it is claimed the will of John Landers was construed were burned. A certified copy of the deed, however, which was made to Bryant Landers in that suit is in the record, the deed book in which it was recorded being only partially burned. The deed contains the following provisions:

"Whereas, in the action of Bryant Landers, Dock Landers, Jacob Landers, Thomas W. Dodson, A. J. Dodson and Luther Dodson, plaintiffs against I. W. Landers, Isaac Landers, Sidney Landers, Patsy Moore, (Late Landers and her husband, Hozy Moore), Nahala Hunt (late Landers and husband, R. N. Hunt), Laney Motley (formerly Landers), Elizabeth Motley (late Landers and her husband, E. C. Motley), Martha Kuykendol (late Dodson and husband, Hardin Kuykendol), Isaac Dodson (balance of defendants' names written on the margin and was burned off), then pending in the Allen Circuit Court, an order was entered at the May term, 1887, directing F. G. Harlan the Master Commissioner of said court, to execute a deed of conveyance to said Bryant Landers during his natural life with remainder to the heirs of John Landers, excluding Jacob Landers, in the event Bryant Landers died without heirs of his body. Now, therefore,

"This indenture, made and entered into this 6th day of May, 1887, between the above named plaintiffs and defendants, by F. G. Harlan, Commissioner of the said court, of the first part, and Bryant Landers of the Second part, Witnesseth, that for in the consideration of the premises, the parties of the first part, by F. G. Harlan as Commissioner aforesaid, by this writing do convey to said party of the second part during his natural life with remainder to the heirs of John Landers, deceased, excluding Jacob Landers in the event of said Bryant's death without children of his body, the following described property, to-wit:" (Here follows description of property and other provisions not necessary to be set out.)

The deed shows that it was examined and approved in open court on the 7th day of May, 1887, by D. R. Carr, Judge. The certificate of the circuit clerk on the deed shows that it was acknowledged by F. G. Harlan, Commissioner, and was examined by the court, approved, confirmed and so endorsed by the judge, and ordered to be transmitted, duly certified, to the Clerk of the Allen Circuit Court for record, which was accordingly done. The certificate of the circuit clerk is dated May 10, 1887. Following the certificate of the circuit clerk is the certificate of the clerk of the county court to the effect that the deed in question was produced to him in his office on May 10, 1887, certified for record, and that the same, together with the certificate, had been recorded in his office. In addition to this evidence, Judge B. W. Bradburn testified that he had been a practicing attorney for thirty years or more. He began the practice of law in Scottsville, Kentucky, in 1878. In 1886 or 1887, Bryant Landers and his brother, Dock Landers, and other brothers and sisters and their children, instituted a suit in the Allen Circuit Court for the construction of the will of their father, Isaac Landers, and their brother, John Landers, and for a division of the land devised by the said Isaac Landers under his will. This suit was brought by Judge I. H. Goodnight, of Franklin, Kentucky, and John M. Wilkins of Bowling Green, Kentucky, for Bryant Landers and the other plaintiffs. The judge who presided over the Allen Circuit Court at that time was Preston H. Leslie. When he testified, Goodnight, Wilkins and Leslie were all dead. Bradburn was appointed guardian *ad litem* or attorney for non-resident defendants; possibly both. He examined the petition, and re-

membered distinctly that the suit was brought for a construction of the will of Isaac Landers and of John Landers. Judge P. H. Leslie was then the presiding judge, and rendered a judgment, in which he determined that by the will of Isaac Landers, his sons took one-sixth each in the land of their father, subject to the life estate of their mother. The court further adjudged that John Landers took a one-sixth interest in said lands, and that under the will of John Landers, Bryant Landers took a defeasible fee, and that his interest in the John Landers estate in case Bryant Landers died without issue, passed to his brothers and sisters and the descendants of those who died, except Jacob Landers and his descendants. In accordance with said judgment, commissioners were appointed to divide the lands of Isaac Landers into six shares or parcels. John Landers having died prior to the time of the division, the court directed the master commissioner to convey the one-sixth allotted to the estate of John Landers to Bryant Landers, during his life, provided he died without bodily heirs, and then to his brothers and sisters and their descendants, except Jacob Landers and his descendants. In conformity to the judgment of the court the land was so deeded by the master commissioner. This judgment was never set aside or appealed from. After the judgment was so prepared, it was either read over to him in his presence or read by him. He remembered that the judgment was entered and that the commissioners who divided the land filed their report. The report was confirmed, and the master commissioner directed to make deeds of conveyance according to said judgment. The deeds were so made and approved by the judge of said court. The deeds were certified to the clerk's office for record. The clerk recorded the same and the deed filed with plaintiffs' reply is a correct copy of the original deed made by the master commissioner under the direction of the court. On cross-examination, Judge Bradburn stated he was attorney of record for the plaintiffs in this case. Upon referring to the deed, he stated he was mistaken in stating that Leslie was the presiding judge, because it appeared from the deed that D. R. Carr was the presiding judge. He could not remember who the sheriff was at the time, or who the commissioner was. He could name but two of the three commissioners who divided the land. Did not remember what kind of pleadings he filed as attorney for non-resident or guardian *ad litem*,

but supposed they were the usual kind of pleadings which would be filed by a young attorney in such a case. He also stated his practice had been large in the years subsequent to the suit in question, and nothing had occurred in the meantime to recall the suit, or to impress it on his mind.

W. H. Justice, the Clerk of the Allen County Court, testified that the copy of the deed above referred to was a correct copy of the original deed of record in his office. That the greater part of the records in the Allen County Court were destroyed by the fire in 1892, but this particular deed was intact, with the exception of one or two words on the margin of the page of the deed book which had been charred, but this condition was not sufficient to render the deed unintelligible.

Judge D. R. Carr, who is quite old, testified that he was the presiding judge of the Allen Circuit Court at the time it is claimed that the action for the construction of John Landers' will was pending. He had no recollection of said suit.

It will be observed that the deed in question is not only regular in all respects, but, after setting out the parties to the action, recites that an order was entered at the May term, 1887, directing F. G. Harlan, the master commissioner of the court, to execute a deed of conveyance to Bryant Landers during his natural life, with remainder to the heirs of John Landers, excluding Jacob Landers, in the event Bryant Landers died without heirs of his body. Thus the deed itself shows that it was made pursuant to the foregoing order. The Allen Circuit Court being a court of general jurisdiction, every presumption in favor of its jurisdiction will be indulged. There being the aforesaid order, directing not only what land should be conveyed to Bryant Landers, but how the land should be conveyed, it will be presumed that the court had before it the question of the construction of John Landers' will, and that the order was predicated on the will as construed by the court, rather than that the order was entered without the question of construction being before the court. While it is true that Judge Bradburn was mistaken in believing that P. H. Leslie was presiding over the court at the time of the pendency of the action, instead of D. R. Carr, and there are other matters about which his memory is at fault, he testified unequivocally to the fact that the construction of John Landers' will was involved in that action. Considering

the deed itself in connection with the testimony of Judge Bradburn, and the further fact that Bryant Landers himself accepted the deed and put it to record and held the land under it for a number of years, we conclude that in the absence of evidence to the contrary, the evidence is sufficient to show that in the action in question the construction of John Landers' will was involved, and that a judgment was entered adjudging that Bryant Landers take under the will of John Landers only a defeasible fee. Bryant Landers being a party to that action, and there being a judgment construing the will of John Landers, and that judgment never having been set aside or reversed, it is *res judicata,* and conclusive upon Nealie Landers, the devisee of Bryant Landers.

The next question to be determined is: Is Nealie Landers, the widow of Bryant Landers, entitled to dower in the land in question? It is the well settled rule in Kentucky that where the husband owns a defeasible fee in land, the widow on his death is entitled to dower. Rice v. Rice, 133 Ky., 406, 118 S. W., 270. Counsel for plaintiffs recognize this rule, but insist that as Nealie Landers claimed the absolute ownership of the tract in controversy under and by virtue of her husband's will, and continued to do so for a period of two years, her election to take under the will precludes her from asserting dower in the tract in controversy. It is true that under our statutes and decisions the widow of a testator is not entitled to her dower and distributable share of her husband's estate where she has failed to renounce the provisions of his will within twelve months from the time of its probate. Kentucky Statutes, section 1404; Bayes, &c. v. Howes, &c., 113 Ky., 465; Morgan, et al. v. Christian, et al., 142 Ky., 14. The reason for the statute and the rule is that the positions of devisee and doweress are absolutely inconsistent. Subject to the exceptions in the statute, she must take either what the husband devises, or what the law gives her. Having elected to take under the will, she cannot thereafter assert a claim for dower. Manifestly, the statute and the decisions based thereon apply only to property which may be the subject of a devise. Bryant Landers having only a defeasible fee in the property in question, his authority ended at his death. No heir of his could inherit any interest therein, and no creditor of his could subject the property. Nor could he dispose of it by will. As a defeasible fee is not a proper subject for disposition

by will, it cannot be said that the widow, in asserting dower therein, is claiming in opposition to the will. We therefore conclude that her election to take under her husband's will did not preclude her from asserting dower in the tract in controversy.

The next question to be determined is whether or not plaintiffs may recover damages from the estate of Bryant Landers for the timber cut and removed by him from the 170 acres of land devised to him by John Landers, and in which he owned only a defeasible fee. Our statute on the subject does not cover a defeasible fee, so recourse must be had to the common law. In 2 Blackstone, page 282, we find the following:

"Let us next see who are liable to be punished for committing waste. And by the feudal law, feuds being originally granted for life only, we find that the rule was general for all vassals or feudatories; '*si vassalus feudum dissipaverit, aut insigni detrimento deterius fecerit, privabitur.*' But in our ancient common law the rule was by no means large; for not only he that was seized of an estate of inheritance might do as he pleased with it, but also waste was not punishable in any tenant save only in three persons; guardian in chivalry, tenant in dower, and tenant by the curtesy; and not in tenant for life or years; and the reason of the diversity was, that the estate of the three former was created by the act of the law itself, which therefore gave remedy against them; but tenant for life, or for years, came in by the demise and lease of the owner of the fee, and therefore he might have provided against the committing of waste by his lessee; and, if he did not, it was his own default. But, in favor of the owners of the inheritance, the statutes of Marlbridge, 52 Hen. III, c. 23, and of Gloucester, 6 Edw., I, c. 5, provided that the writ of waste shall not only lie against tenants by the law of England (or curtesy), and those in dower, but against any farmer or other that holds in any manner for life or years. So that for above five hundred years past, all tenants merely for life, or for any less estate, have been punishable or liable to be impeached for waste, both voluntary and permissive; unless their leases be made, as sometimes they are, without impeachment of waste, *absque impetitione vasti;* that is, with a provision or protection that no man shall *impetere,* or sue him for waste, committed. But tenant in tail after possibility of issue extinct is not impeachable for waste;

because his estate was at its creation an estate of inheritance, and so not within the statutes. Neither does an action of waste lie for the debtor against tenant by statute, recognizance, or *elegit;* because against them the debtor may set off the damages in account; but it seems reasonable that it should lie for the reversioner, expectant on the determination of the debtor's own estate, or of those estates derived from the debtor.''

The proprietor of a qualified or base fee has the same rights and privileges over his estate, till the contingency upon which it is limited occurs, as if he were tenant in fee simple. Walsingham's case, Plowd., 557—Chitty.

In Weed v. Woods, 71 N. H., 581, it was held that where a deed reserves to a grantor a certain portion of the premises so long as a religious association may want it, the estate retained is a qualified or determinable fee; and during its continuance the grantor and his successors in title, while they retain possession, have all the rights of tenants in fee simple.

Mr. Washburn, in his treatise on real property, 4th edition, volume 1, page 89, section 86, in speaking of the incidents of a determinable fee says:

''So long as the estate in fee remains the owner in possession has all the rights in respect to it which he would have if tenant in fee simple, unless it be so limited that there is properly a reversionary right in another— something more than a possibility of reverter belonging to a third person, when, perhaps, chancery might interpose to prevent waste of the premises.''

In Gannon v. Peterson, 55 L. R. A., 701, 193 Ill., 372, it was held that the opening of mines, and the mining of coal by the owner of a determinable fee in property of which the coal constituted the chief value, was not such waste as could be enjoined by the owners of the expectancy, who claimed under an executory devise—at least where it is not made to appear that the contingency which would determine the fee was reasonably certain to happen. In discussing the question the court said:

''The authorities are uniform as to the definition, duration, and extent of a base or determinable fee. They are agreed that it is a fee-simple estate; not absolute, but qualified. Upon the death of the donee, his widow has dower, although the contingency may have happened that defeats the estate, and that within the general acceptation and meaning of the term the person seized of such an estate is not chargeable with waste.''

The only exception to this rule is that equity will sometimes restrain equitable waste. Equitable waste is defined by Mr. Justice Story to consist of "such acts as at law would not be esteemed to be waste under the circumstances of the case, but which, in the view of a court of equity, are so esteemed from their manifest injury to the inheritance, although they are not inconsistent with the legal rights of the party committing them." 2 Story Eq. Jur., sec. 915. The same author further says: "In all such cases the party is deemed guilty of a wanton and unconscientious abuse of his rights, ruinous to the interests of other parties." Lord Chancellor Campbell, in Turner v. Wright, 6 Jur. N. S., 809, 29 L. J. Ch. N. S., 598, defines equitable waste to be "that which a prudent man would not do with his own property."

Even if an action for damages would lie for equitable waste, a question not decided, there is nothing in the record before us to show that Bryant Landers was guilty of such waste. It does not appear that he was guilty of a wanton and unconscientious abuse of his rights, or that he did that which a prudent man would not do with his own property. We therefore conclude that the action for waste was properly dismissed.

The judgment in the case of J. E. Landers, etc. v. Nealie Landers, etc., is affirmed. The judgment in the case of Elizabeth Motley, etc. v. L. D. Landers, etc., is affirmed, both on the original and cross appeals.