Sullivan,
Oct. 1, 1935.

SUNAPEE DAM CORPORATION *v.* GEORGE ALEXANDER *& a.*

398

*Faulkner & Bell* (*Mr. Bell* orally), for the plaintiff.

*Demond, Woodworth, Sulloway, Piper & Jones* (*Mr. Demond* orally), for certain defendants.

*Murchie, Murchie & Blandin* (*Mr. Alexander Murchie* orally), for Claremont Paper Co., Inc.

*Barton & Andler*, by brief, for Brampton Woolen Co.

*Barton & Andler*, for Nutting Machine Co., and *Leahy & Leahy*, for Alexander Syzman, furnished no briefs.

ALLEN, C. J.  The plaintiff was granted a charter by the legislature in 1820.  8 Laws of N. H. 927.  The preamble and parts of it are as follows:

"Whereas Josiah Stevens and his associates have petitioned the Legislature representing that they are proprietors of mills and mill privileges on Sugar river, having its source in Sunapee Lake and discharging itself into Connecticut river; that there is on Sugar river, occasionally, a deficiency of water . . . from said lake . . . " [to give

to said mills a perfect operation; that said deficiency may be supplied from said lake by means of a dam and gates erected at that point of said lake where the same communicates with said river; and praying to be incorporated with power to accomplish said object, which prayer appearing reasonable]:

"Sec. 1.  . . . Josiah Stevens [and other named individuals] with those who may associate with them, and their successors, be, and hereby are, incorporated and made a body politic by the name of the *Sunapee Dam Corporation.*

"Sec. 2d.  . . . said corporation is hereby empowered to sink the outlet of said lake at the source of said Sugar river to the depth of ten feet below the low water mark of said lake, and to erect and maintain a dam there, with suitable gates and flumes, to the height of said low water mark, for the benefit of the mills & mill privileges aforesaid, . . .

"Sec. 3d.  . . . said proprietors & their associates and those who may become proprietors of said mills and mill privileges, shall, while they continue such, pay to the . . . corporation such sums . . . as said corporation at its annual meetings may assess on them respectively for the purpose of constructing and maintaining said dam and works, which sums so assessed may be recovered by said corporation in an action of debt . . ."

Upon their grant the plaintiff proceeded to exercise its charter powers and built its dam at the outlet of the lake.  It has since continuously maintained the dam and managed its operation to control the flow of water from the lake.  Some ten years ago the dam was rebuilt at substantial expense.  At a special meeting of the plaintiff's members in 1928 an assessment against them to pay for the expense was voted.  This litigation largely centers around the assessment, and the issues of its validity and application are raised.  The contestants take different positions.  Some, admitting the validity of the vote, say that action upon it is illegal because certain water power owners were not included as subject to the assessment.  The defence of others is that not being members, they were not assessable.  Exclusion from assessment liability and exclusion from the assessment voted notwithstanding liability to be assessed, summarize in statement the chief points of contention.

For many years membership in the corporation has in practice been uncertainly defined or determined.  Two conditions have been fixed.  One is that membership is limited to those owning water power on the river, and one is that such owners are members while

acknowledging they are. Beyond them some looseness of method and policy has been followed. In 1921 a meeting of the members adopted a new set of by-laws for the corporation. One article related to membership. It did not clear the doubts, and it is difficult to construe it in consistent harmony either with its various terms or in connection with other articles and votes passed at the meeting. About the only advance it made in the removal of uncertainty was to require acceptance for a resignation to become effective. Membership has not been measured by eligibility thereto, no membership list has been maintained, and contributions from parties doubtfully or not regarded as members have been accepted in lieu of assessments against them.

The underlying cause of the uncertainty and confusion respecting membership lies in misconception and oversight of the structural character of the corporation for which its charter provided. The theory of a corporate entity separate and insulated from those composing it has been employed to displace the doctrine established here that the corporation is "an outgrowth of the law of partnership." (*Bowditch* v. *Company*, 76 N. H. 351, 354.) The terms and purposes of the grant have been denied proper consideration from the standpoint of this view.

The partnership ancestry of the corporation has been stressed in *Dow* v. *Railroad*, 67 N. H. 1, where it is said (3, 4): "A private business corporation is 'an association formed by the agreement of its shareholders', and its existence 'as an entity, independently of its members, is a fiction' . . . . By the first section of the Northern Railroad charter . . . it is enacted 'That Timothy Kenrick' and twenty other persons, 'their associates, successors and assigns, shall be and hereby are made a body politic and corporate by the name of the Northern Railroad'. Here is no evidence of an attempt to introduce a mystery, or to create a fictitious being, to whom the state can give neither body nor mind. The stockholders are the corporation. They have the entire equitable title and beneficial interest of the property by them put in the corporate trust; and they are the corporate trustee in whom is vested the legal title. All of them, assembled at their annual meeting, . . . and exercising their stockholding rights in any . . . legal act, would be the visible body, and the acting mental and moral faculty, whose partnership name is the Northern Railroad. They are made a body, not by the legislature, but by their own several acts of becoming stockholders and joint principals . . . . Whether they are incorporated or not, their company is formed by their con-

tract with each other, and it has such powers and duties as the law allows them to give it, and such as the law grants and imposes . . . "

If elsewhere there is any recognition of a conception that a corporation, apart from and regardless of its membership, is "an objectively real entity" (*vide* xxiv Harv. Law Rev. 253, 347, 361), the doctrine that it is an associated body as expounded in *Dow* v. *Railroad* has not undergone modification here. *Blue M't'n &c Ass'n* v. *Borrowe*, 71 N. H. 69, 73, 74. "The fiction that the corporation is a being independent of those who are associated as its stockholders is not favored in this state. *Dow* v. *Railroad, supra*, 3." *Bowditch* v. *Company, supra*, 354.

Whatever the thought, in subsequent legislation, of corporate character in relationship between the corporation and its stockholders or members, the legislation is without bearing in the construction of a special act of incorporation enacted in 1820. And the view of association is peculiarly applicable to such an act of that time when the evolution from partnership to its offshoot of corporate growth was far less developed than now, and when the act was to promote an enterprise limited in benefit to parties having a common interest not shared by others. The plaintiff is not a stock company, it is not engaged in a money making business, and its only service is to enhance the value of the separate properties of its members.

When the charter was granted, the grantees had occasion to take group action for a common cause. The enterprise in itself not being productive of income, it was obviously unfair that the expense should not be borne in the proportion of the benefit each received. It is plain that the incorporators' ownership of their water powers was to be burdened with the expense so long as the objective continued unabandoned by them or their associates and successors. It was important that payment for the expense should be equitably and permanently secured. Ownership of the property benefited was to be the security, through the owners' membership in the corporation. As the charter reads, the "proprietors of said mills and mill privileges" are to be assessed. The correlation of such proprietorship and liability to assessment was accomplished through the connecting link of membership.

Ownership of water power determined liability to assessment, and by virtue of the ownership membership in the corporation was constituted. The charter objectives were thus attained. The state bestowed rights for the common benefit of river-power owners, and they were to be held for the expense of exercising the rights. The

rights were to be exercised and the burdens enforced by a corporate agency of which the owners were in a real and practical sense the principals. It was their organized association.

The charter is clear to such effect. Its original grantees were proprietors of "mills and mill privileges" on the river. They "with those who may associate with them, and their successors," were "incorporated and made a body politic." The associates could be no other than owners of other river power, and the successors were the subsequent owners of power. The original grantees, the associates, and the successors in title were, by the implicit terms of the charter, to be members during their respective ownership of power. While, but only while, they continued to be such owners were they to be assessed. On no other basis may the charter be fairly construed. Benefit received was to be paid for by just assessment among the owners, and the charter imposes upon them their status as members, almost in express terms and as a necessary prerequisite to fairness of assessment.

It may not be justly argued that membership is in reality compelled. By the terms of the charter the original incorporators accepted it for themselves and for their successors. Successor owners of power thus acquired membership by virtue of their succession, as an incident of their ownership. The ownership of power of those who as associates became members also carried the status of membership to their successors, by the inclusions of the charter. Only power owners not thus embraced under some one of these tests may escape membership. Membership is thus a voluntary burden running with ownership of power, by force of the charter.

Since by the charter membership is limited to its grantees, their associates, and the successors in title of the grantees and associates, an owner of power not thus included is not a member and may not be liable to assessment. Association is not brought about solely through force of ownership. Voluntary entrance into membership is also a condition. Those "who may associate" are those consenting to do so. But while association is thus optional, once entered into, it carries membership to successors in title, as in the case of successors of the original grantees. This the charter prescribes. It follows that one who is entitled to become a member as an associate may enjoy an unfair advantage by abstaining from becoming one, but the charter stopped short of undertaking to impose any involuntary membership, and no issue of a proper legislative exercise of police power is presented.

The Nutting Machine Company was found not to be a member, its predecessors in title not having been members and no action of its own to become a member having been taken. For the same reasons the defendant Syzman was found not a member. The exceptions to the findings have been waived by omission to argue the evidence relative thereto. The bill should therefore be dismissed as to these defendants.

The status of membership as an accompaniment of ownership of river power is of legislative creation and may not be limited or destroyed by by-laws in conflict with the charter. Membership is tested by ownership and commences, continues, and ends with it. By-laws may provide reasonable regulations of membership, but they may not alter or abridge conditions fixed by the legislature for entrance or loss or exit.

The Claremont Paper Company Inc. and Brampton Woolen Company are members, by force of the finding that their respective predecessors in title were members. The finding that the former owner of one of the powers of the Brampton company was "probably" a member of the corporation is a finding that he was. *Pulsifer* v. *Walker*, 85 N. H. 434, 436, and cases cited. The exceptions to the findings have not been argued and have therefore been waived.

One defendant admits membership but denies liability to be assessed because its power although developed is not used. The words in the charter "mills and mill privileges" denote the need of developed power to entitle the owner to membership. Only when there is a dam is there a "mill privilege," within the tenor of the charter. But power being developed and membership existing, liability for assessment ensues. The charter makes no exception in favor of a member not using his developed power. So long as it is available for use, it meets the inclusion the charter prescribes. If an exception were made for non-user of power, the owner might escape liability when there is as here a large expense for reconstruction of probable long endurance, thus extending the benefit indefinitely into future years when the power might be again used. While his power remains developed, the owner receives some benefit of value. He has an equalized flow of water, whether or not he uses it. The plaintiff is rendering him a service. Whether or not he cares to take advantage and make use of it, it enures to enhance the value of his property.

The assessment schedule adopted in 1921 is illegal because its list of power owners is not in correct conformity with membership. But assessments voted to be apportioned according to it and paid may

not be recovered. *Harding* v. *Hewes, post,* and cases cited. A vote to assess must adopt an equitable and fairly proportionate basis of benefit received. But the rights of others not being impaired, the members through proper corporate action may provide for the adjustment of the assessment in a special instance. An assessment liability in dispute may be settled by the ordinary process of negotiation and compromise. And contributions in lieu of the payment of assessments are to be credited as their equivalent, since the condition attached to them that the claim of right to assess should be waived.

The 1928 assessment vote was passed at a special meeting of the corporation. By the by-laws it might be. By the charter, assessments are to be voted at annual meetings. No fair reading of the charter permits annual meetings to include special ones, and the by-law is invalid. Whatever the reason, whether of oversight or otherwise, the charter authorizes no assessments other than it specifies. Specifications are exclusionary. *Brahmey* v. *Rollins, ante,* 290. And construction is not available to broaden authority expressly defined and limited. *Chretien* v. *Company, ante,* 378.

The charter permits the corporation to "receive, purchase and hold any estate of the value" of $1,000. By an amendment it may "purchase and hold, in fee simple, use and alienate, real and personal estate" to the amount of $10,000 in order "to enable it more fully to accomplish" its object. These provisions refer to property other than the dam itself, the authority to erect which was otherwise granted. In limiting the amount of property which might be acquired and held the legislature has indicated no purpose to control the expense of the dam, either in its erection or in its maintenance. Its reconstruction was an act of maintenance. The question of the validity of the assessment if it were more than authorized expense in connection with the dam, therefore does not arise.

Argument has been made that the public interest of safety in the erection and maintenance of the dam is of aid in the construction of the charter upon the issue of assessment liability. By reason of the conclusion reached the argument does not invite attention. If it has no force, its disregard does not affect the result.

*Case discharged.*

All concurred.