Belknap
No. 7020

SARGENT LAKE ASSOCIATION

v.

ARNOLD DANE & *a.*

January 31, 1976

*Wiggin, Nourie, Sundeen, Pingree & Bigg, Larry B. Pletcher* and *W. Wright Danenbarger (Mr. Pletcher* orally) for the plaintiff.

*Snierson, Chandler & Copithorne (Mr. John P. Chandler* orally) for the defendants.

GRIFFITH, J.   This is a bill in equity brought by the Sargent Lake Association, an incorporated group of residential landowners in a Belmont, New Hampshire development. Plaintiff sought to compel the defendants, successors in interest to the original developers, to convey to it the Sargent Lake dam, a beach lot, certain property on the lake and to pay the cost of certain repairs to the dam. As a result of a stipulation and hearing before a Master *(Charles Gallagher,* Esq.) a decree was entered by the Trial Court *(Loughlin,* J.) ordering conveyance of the dam and certain of the contested properties to the plaintiff. This decree has been complied with by the defendants. The master refused to order defendants to pay the cost of repairing the dam or to convey certain beach property. The exceptions of the plaintiff on these two issues were reserved and transferred by *Loughlin,* J.

The Sargent Lake Association, organized under the laws of New Hampshire in August of 1970, includes as members forty-five of the approximately fifty-five to sixty families owning lots in the Sargent Lake Development. In the late 1950's and early 1960's George and Ida Curley, the original owners of the development, conveyed lots by deeds most of which contained the following language:

"The Grantors further convey to the Grantees the right to become members of an association to be formed by the grantors, to which association the grantors will convey the dam controlling said Sargent Lake."

Defendants acquired title to the remainder of the development in 1966 by conveyances all containing a restriction providing they were "subject to the rights of others in the roads, beaches, lake and

dam in said development as they appear." No dispute remains as to the right of the plaintiff to the dam which has now been conveyed to it. In issue here is the claim of the plaintiff that defendants are liable for expenses incurred in repairing the dam. Repair cost was estimated at $25,000, but we have since been informed by counsel that it may have been substantially less. The master found and ruled that he was "unaware of any rule of law that would require the defendants to undertake this expense and finds that their profits on land sales are not so large as to require them to repair the dam on equitable principles."

It appears that the dam is about one hundred years old. The master granted plaintiff's request for finding that the dam fell into its present state of disrepair while under the ownership of defendant Arnold Dane and his interests, adding the words "as to the seriousness of the condition."

While the original deeds from Curley to lot owners provide that the "grantors" would form the association that the dam would be conveyed to, no such requirement was imposed upon the defendants by their deed. Instead defendants were required to convey to the association "if and when formed". The apparent intent of both the original covenant by Curley in his deeds and the subsequent condition in the deed to the defendants was to transfer the dam and its maintenance to those who benefited from its existence. In the absence of such provisions we are not prepared to say that a developer who sold lots on a man-made lake could not be held responsible for maintenance of a dam he retained. *See Taggart v. Jaffrey,* 75 N.H. 473, 76 A. 123 (1910); *cf. Whitcher v. State,* 87 N.H. 405, 181 A. 549 (1935).

The dam has a positive value to the lot owners as a means of controlling the lake but had a negative value to the defendants after the lots were sold. The transfer of ownership to an association of owners would divide the cost of maintenance among those benefiting from the dam. *See, e.g., Sunapee Dam Corporation v. Alexander,* 87 N.H. 397, 181 A. 120 (1935). The issue of whether the defendants can be charged with the repair costs of the dam turns on what duty if any the defendants owed the plaintiff before the plaintiff came into existence.

The plaintiff argues that the defendants are liable as a life tenant would be to a remainderman for permissive waste. "[A]ny acts or omissions of the life tenant which are prejudicial to the remainder interest constitute waste. It is waste not to make needed repairs and maintain the property." *Hanley v. Wadleigh,* 88 N.H.

174, 177, 186 A. 505, 507 (1936). However the relationship of the defendants to the plaintiff is not analogous to that of a life tenant to a remainderman. When the defendants took title in 1966 they did not assume the agreement to create the association but took subject to an obligation to convey the dam to an association "if and when" it was formed. The organization of the association from 1966 on was within the discretion of the lot owners. Whenever they chose to create the association, it became entitled to conveyance of the dam with the concurrent burden of its maintenance. The years of defendants' retention of the dam was thus subject to plaintiff's organizer's discretion.

Until the plaintiff was organized in 1970, no remainderman existed to take title to the dam and the defendants possessed a fee simple defeasible. It is well settled that the owner of a future contingent interest in fee simple preceded only by an estate in fee simple defeasible cannot recover damages from the owner of the present estate for conduct decreasing the value of the future interest as long as the interest continues to be future. Restatement of Property § 194 (1936); 1 American Law of Property § 4.104 (A.J. Casner ed. 1952); 5 R. Powell, Real Property § 646 (1974); *Landers v. Landers*, 151 Ky. 206, 151 S.W. 386 (1912); *Annot.,* 144 A.L.R. 769, 774-79 (1943).

It follows that the plaintiff is entitled to be reimbursed only for such expenses of repair as may be found to have resulted from the defendants' failure to perform reasonable maintenance after the time when the plaintiff's interest became a present one, *i.e.,* after the association was formed and made a demand on the defendants for conveyance of the dam. During any period between the demand and the conveyance by the defendants, the duty to avoid permissive waste applies to the defendants as it does to a life tenant, a vendor in possession after the signing of the purchase and sale agreement, and a mortgagor in possession. 51 Am. Jur. 2d *Life Tenants and Remaindermen* § 259 (1970); 77 Am. Jur. 2d *Vendor and Purchaser* 357 (1975); *see* RSA 477:29 (b) (1968); *The Vendor's Liability for Permissive Waste,* 48 Harv. L. Rev. 821 (1935); *Rappaport v. Savitz,* 208 Pa. Super. 175, 177, 220 A.2d 401, 403 (1966).

The findings of the master on this issue cover the period from 1966 to the date of his report which was accepted January 15, 1973. Accordingly, the case must be remanded for a determination of whether any of the repairs to the dam were necessitated by the failure of the defendants to perform reasonable and ordinary maintenance during the period between plaintiff's demand for

conveyance and the conveyance. If it appears that repairs were so necessitated the court may require defendants to reimburse the plaintiff for their cost.

Plaintiff claims that the master erred in not ruling that the remainder of the beach area and another shore front lot known as the Dock Road Area be conveyed to the plaintiff. The master found that Leon Whitten acted as agent for both the defendants and their predecessors in title in the sale of lots and that he represented to purchasers that these areas would be conveyed to the plaintiff.

The master ruled that the language in the deeds referring to these areas was contrary to the oral representations of Whitten and barred plaintiff's claim. The language in the deeds contained no agreement to convey these areas to the plaintiff but gave grantees the right to use these areas in common with others. The dam and other land now conveyed were included in agreements to convey contained in the deeds. The master correctly ruled that the landowners had the right to use these areas but that the "explicit language of the deeds" barred the plaintiff's claim to a conveyance. As was the case in *Gulezian v. Manchester,* 112 N.H. 135, 290 A.2d 631 (1972), the language of the deeds precluded any possibility of the oral agreement being considered a collateral agreement enforceable in spite of the parol evidence rule. *See Claveau v. Plantier,* 102 N.H. 487, 161 A.2d 166 (1960).

*Plaintiff's exceptions sustained in part; remanded.*

All concurred.