Hillsborough
No. 7213

GLORIA B. LITCHFIELD

v.

MEL K. PFEFFER *& a.*

August 31, 1976

*Wadleigh, Starr, Peters, Dunn & Kohls* and *Eugene M. Van Loan III (Mr. Van Loan* orally) for the plaintiff, Gloria B. Litchfield.

*Steven A. Solomon,* by brief and orally, for defendants Mel K. and Pauline J. Pfeffer.

LAMPRON, J.  Action to recover payments due on certain promissory notes executed by the defendants on August 31, 1970, and payable to Roy F. Litchfield and to plaintiff Gloria B. Litchfield, then husband and wife. Hearing before *Cann*, J., who granted all of plaintiff's requests for findings and rulings and rendered a verdict for the plaintiff in the amount of $5,815.14. Defendants' motion to set aside the verdict was denied and their exceptions were reserved and transferred.

The notes in question arose out of the sale by the Litchfields to the defendants, Mel K. and Pauline J. Pfeffer, of a dwelling in Milford for $27,000. The purchasers assumed an existing mortgage which with other adjustments left a balance due of $14,030.22. Deducting the down payment of $6,000, there remained a balance of $8,030.22 for which the Litchfields received three notes of $1,000 each and a note of $5,000 all payable to Roy F. Litchfield and Gloria B. Litchfield or order. The three $1,000 notes were payable, with interest, on October 1, 1970, November 1, 1970, and December 1, 1970 respectively. The $5,000 note was payable on September 1, 1973, with annual interest payments. The payment of all of these notes was secured by a second mortgage to the Litchfields on this property. Each note provided that in the event of default the makers agreed to pay "any and all costs of collection including reasonable Attorney's fees."

On September 18, 1970, the defendants were notified that

Gloria Litchfield had begun divorce proceedings against her husband and that payments on the notes should be made to her attorney or to an escrow account. Mel Pfeffer advised that he had deposited in escrow $1,007.50 the payment on the first $1000 note due October 1, 1970. On October 6, 1970, the Pfeffers were notified that payments should be made to Gloria's attorney payable to both her husband and herself.

Mel Pfeffer testified that on October 9, 1970, he gave Roy Litchfield $2,000 in cash, part of which was used to release an attachment placed on the real estate in question on September 24, 1969, by Andy's Drywall Inc. The balance went to obtain a settlement of a suit brought on October 8, 1970, to recover for legal services rendered to Roy and Litchfield Company Inc. The plaintiffs in that writ were Lincoln and Edwards. There was evidence that Attorney Lincoln represented Mel Pfeffer in his business transactions and Attorney Edwards represented Roy Litchfield in his business affairs and also when the property in question was sold. He also represented Roy in the early stages of the divorce proceedings.

Both of the releases of attachments in the above suits were dated October 16, 1970. Pfeffer testified that Roy Litchfield marked two of the $1,000 notes "paid in full" at that time and signed his name without any date. He further testified that on October 28, 1970, he withdrew money from the escrow account, and after adjustments, paid Roy the third $1,000 note with a check from his own account. Roy again signed that note "paid in full" without any date appearing. There was evidence that Roy Litchfield had possession of these notes during that period.

However, there was evidence in the form of a check drawn on the escrow account that Andy's Drywall was paid from that source. Furthermore there was evidence from bank statements that there was only $50.65 in the escrow account when it supposedly was used to pay the third note of $1,000 from that account. Plaintiff Gloria testified that Mel Pfeffer first told her he paid the three notes in cash and on another occasion that all payments came from the escrow account which never had more than $1,051.47 during its existence. There was evidence that Roy and Mel were friends as well as doing business with each other.

The trial court properly found and ruled that these notes payable to "Roy F. Litchfield and Gloria B. Litchfield or order" could be discharged only by both of them. RSA 382-A:3-116 (b); *Muzzy*

*v. Rockingham County Trust Co.,* 113 N.H. 520, 523, 309 A.2d 893, 895 (1973). The record supports another finding by the trial court that the defendants have not paid Roy anything on the three $1000 notes.

Defendants' main arguments on appeal pertain to clause 2 of the stipulations in the divorce action, which reads as follows: "The unpaid balance due on the note of M.K. Pfeffer, secured by mortgage is awarded to Libelant and Libelee shall execute all necessary documents to effect this assignment." They maintain that Roy Litchfield as one of the parties to this stipulation is an indispensable party to the present action and his absence stripped the trial court of jurisdiction over the subject matter. If the defendants are arguing that, because of Roy's absence as a party, the trial court cannot take any action on the stipulation which will bind him, we agree. *Constantopoulos v. N.H. Dept. Employment Security,* 107 N.H. 400, 405-06, 223 A.2d 418, 421-22 (1966). In that context we are talking about rights under the due process clause. *See Hanson v. Denckla,* 357 U.S. 235, 254 (1958).

Indispensable parties were defined in *Shields v. Barrow,* 58 U.S. (17 How.) 130 (1854), as those "who not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience." *Id.* at 139. Besides the due process aspect previously mentioned, this definition also includes a balancing of a number of competing considerations in exercising judicial discretion as to whether or not the matter should proceed in the absence of that party. Reed, *Compulsory Joinder of Parties in Civil Actions,* 55 Mich. L. Rev. 327, 334-38 (1957); *see* Fed. R. Civ. P. 19.

Such considerations are the plaintiff's interest in securing some forum, preferably a convenient one, in which to have an adjudication of her claim on the merits. It is to be noted that Roy Litchfield is no longer in this jurisdiction. On the other hand, the defendants must be protected from the risk of multiplicity of suits. Furthermore, society has a distinct interest in avoiding unnecessary litigation because of its expense and its effect on crowded court dockets. F. James, Jr., Civil Procedure §§ 9.16-.17 (1965). Consequently the problem of determining whether the present action was permitted to proceed to a conclusion "does not readily lend itself to solution by fixed and rigid rules. What is called for, rather, is flexibility and a case-by-case appraisal of the

relevant factors." *Id.* § 9.20.

There is no doubt that New Hampshire, where the plaintiff resides, was the most convenient forum for her to seek redress of her claim. Furthermore the claim arose out of a stipulation in a divorce granted by our courts. The notes involved were secured by a mortgage on real estate located here. The property was being sold and a bank in this State was going to file another action, a bill of interpleader, and cause the funds involved to be paid into court if the parties could not agree on the matter or the present action was not allowed to proceed to a conclusion. Furthermore the Pfeffers had possession of these three $1,000 notes marked paid in full by Roy Litchfield so it is not likely that they would be exposed to future action by him. Proceeding with this action avoided the interpleader. We hold that the trial court properly proceeded with the action, especially when the defense of the absence of an indispensable party was raised for the first time on appeal.

Defendants' final argument on the lack of jurisdiction of the trial court to proceed is based on the provisions of RSA 383-A:3-116 (b) that the joint notes in this case "may be negotiated, discharged or enforced only by all of them". However, RSA 382-A:1-103 provides that the substantive rights of the joint parties are still governed by commercial contract law unless it is explicitly displaced by the Code. *See* 10 S. Williston, Contracts § 1135 (3d ed. Jaeger 1967). There has been no such displacement. 1 R. Anderson, Uniform Commercial Code § 1-103:12 (2d. ed. 1970); 2 F. Hart & W. Willier, Commercial Paper Under the Uniform Commercial Code § 3.01[2] (1975).

The meaning of clause 2 of the stipulation is contested. The plaintiff contends that the award to her of the "unpaid balance due on the note of M.K. Pfeffer, secured by mortgage" covered all four notes. The defendants contended it covered the $5,000 note only. The trial court properly received evidence as to its meaning. Its findings based upon evidence of the surrounding circumstances of its execution are binding on this court if supported by the evidence. *Dove v. Knox Mt. Corp.,* 114 N.H. 278, 280, 319 A.2d 640, 641 (1974). Plaintiff and her attorney at the time testified that they understood the stipulation to refer to all four notes. Plaintiff testified that the agreement was that she was to receive the four notes in the amount of $8,000 in exchange for giving up her equity in the property the parties owned in Amherst. The defendants emphasized the use of the singular

"note". In effect the trial court impliedly found that each of the four notes was "the note of M.K. Pfeffer, secured by mortgage" within the terms of the stipulation in question. We hold that the trial court correctly interpreted the stipulation to have effected an assignment to the plaintiff of Roy Litchfield's interest in these four notes. *See Kent v. Kent,* 114 N.H. 350, 320 A.2d 645 (1974).

Because plaintiff had received payment of the $5,000 note, although beyond its due date, the trial court correctly returned a verdict for her in the amount of $5,815.14. It represents recovery of the principal of the three $1,000 notes with interest and legal fees for their collection, and reimbursement of legal fees for the collection of the $5,000, in accordance with their terms. We have considered the other arguments advanced by the defendants for setting aside this verdict. The record supports the verdict and defendants' motion to set it aside was properly denied.

*Judgment on the verdict.*

All concurred.