Carroll
No. 7706

### FREDERICK AND MARTHA KILROE

### v.

### CHARLES N. AND INGE E. TROAST

**July 11, 1977**

*William P. Shea,* of Sanbornville and *Lee W. Mattson* (*Mr. Mattson* orally), for the plaintiffs.

*Sands, Schroeder & McLetchie,* of Ossipee (*Mr. Erland C. L. McLetchie* orally), for the defendants.

KENISON, C.J.   Plaintiffs originally petitioned the superior court to quiet title and to enjoin the defendants from crossing over a portion of the plaintiffs' land. After the court viewed the property, the parties executed and filed a stipulated agreement for the purpose of completely settling all of the claims in the action. The agreement provided (1) that the defendants did have a right of way fifteen feet wide across the plaintiffs' land, (2) that such right of way would be used solely for pedestrian and ordinary passenger vehicle traffic and that "absolutely no commercial or industrial traffic [would] be permitted," (3) that the defendants would maintain the right of way by the use of adequate amounts of gravel, (4) that the defendants would take all necessary measures to prevent flooding of the plaintiffs' land by reason of the right of way and other improvements, (5) that no vehicles of any nature would be parked on or adjacent to the right of way, and (6) that the defendant would not construct more than two residences and would not use any building for industrial or commercial purposes. *Douglas,* J., adopted this agreement as the court's decree.

Soon thereafter the defendants hired a contractor to construct the right of way. In the course of his work, the contractor parked certain vehicles along the right of way. Viewing this as a violation of the agreement, the plaintiffs brought a petition to punish for contempt and to enforce the court's decree. The defendants cross-petitioned for contempt and for clarification of the decree. The court denied plaintiffs' petition and granted the defendants' plea for interpretation of the decree. The plaintiffs' exceptions were reserved and transferred to this court.

■ In a case nearly identical to the present one, we held that a judge may, in his discretion, grant relief from a stipulated agreement if mistake, surprise or fraud exists and that the court's decision will be reversed only for an abuse of discretion. *Perley v. Bailey*, 89 N.H. 359, 199 A. 570 (1938). No surprise or mistake existed in *Perley* because "the plaintiff [admitted] the correctness of the stipulation reported by the master" and so the court did not grant relief. *Id.* at 361, 199 A. at 571. Under the authority of *Perley*, the court in this case exercised its discretion and denied the plaintiffs' requests. Annot., *Relief from Stipulations*, 161 A.L.R. 1161, 1192 (1946). The court's findings based upon the evidence of the circumstances surrounding the execution of the stipulation are binding upon this court. *Litchfield v. Pfeffer*, 116 N.H. 485, 363 A.2d 413 (1976).

In an effort to take the case outside of the realm of discretion under *Perley*, plaintiffs argue that the *Perley* rule presupposes the existence of a valid, enforceable agreement between the parties and that no such agreement was made in this case because no "meeting of the minds" was achieved with respect to what the agreement really meant. Thus, the plaintiffs contend, the court was bound as a matter of law to vacate the agreement for lack of mutual understanding of terms. They claim their intentions were to make the agreement's prohibition against commercial and industrial traffic and parking so absolute as to bar even the parking and use of vehicles during the construction of the right of way. How the defendants were supposed to construct the road without the aid of the proper equipment was never satisfactorily explained in oral argument. The defendants, of course, read the agreement as allowing them to use the vehicles during the construction process and to park them there when necessary for that purpose.

■ The stipulated agreement is contractual in nature and will be governed by contract rules. *D. Latchis, Inc. v. Borofsky Bros., Inc.*, 115 N.H. 401, 343 A.2d 637 (1975). "It follows from the principle that manifested mutual assent rather than actual mental assent is the essential element in the formation of contracts, that a mistaken idea of one or both parties in regard to the meaning of [the agreement] will not prevent the formation of a contract." 1 S. Williston, A Treatise in the Law of Contracts § 94, at 338 (1957). Thus, an absolute and complete " 'meeting of the minds,' is not an unvarying prerequisite." 1 A. Corbin, Contracts § 107, at 478–79 (1963). "When two parties have reduced their agreement

to writing, using the words that each of them consciously intends to use, it is often not a sufficient ground for declaring that the agreement is void or subject to cancellation by the court that the parties subsequently gave different meanings to the agreed language, or even that they gave different meanings thereto at the time that the agreement was expressed." *Id.*, § 104, at 464.

■ For at least a century the law of contracts has been dominated by the idea that the subjective intention of the parties is ordinarily irrelevant. J. Calamari & J. Perillo, The Law of Contracts § 12 (1970). In this state a similar view prevails: The intent of the parties is to be judged by objective or external standards rather than by unmanifested states of mind of the parties. *McConnell v. Lamontagne*, 82 N.H. 423, 134 A. 718 (1926). We determine their intentions based upon the terms of the agreement taken as a whole, *Hayford v. Century Ins. Co.*, 106 N.H. 242, 209 A.2d 716 (1965), and the contract will be given a meaning that would be attached to it by a reasonable person. *Citizens Nat'l Bank v. Hermsdorf*, 96 N.H. 389, 77 A.2d 862 (1951).

■■ Applying these rules of law to this case, we conclude that the language of the agreement taken as a whole does not manifest an intention on the part of the plaintiffs to forbid the parking and use of commercial and industrial vehicles that are necessary for the construction of the road. If that was their intention, it remained undisclosed. A stipulation embraces whatever its terms reasonably imply. *Burbank v. Nordahl*, 199 Cal. App. 2d 311, 18 Cal. Rptr. 710 (1962). The granting of the right to build a fifteen-foot-wide gravel road across the plaintiffs' land reasonably implies the right to use the necessary equipment to build it. It is clear that the ban on commercial and industrial traffic and the prohibition against parking on the right of way does not apply to those activities undertaken by the defendants that are expressly allowed or required by the agreement. Thus the defendants should be allowed to utilize in a reasonable manner during reasonable hours of the day those vehicles and machines necessary to build the road and their residences and to satisfy their duties, under the agreement, of maintaining the gravel road and of preventing flooding of plaintiffs' land.

Based upon the language of the agreement as a whole, the defendants had no reason to know that their interpretation differed from that of the plaintiffs, and the plaintiffs should have realized

that their intentions were not clearly manifested. Restatement (Second) of Contracts § 21 A (Tent. Draft No. 1, 1964).

*Exceptions overruled.*

DOUGLAS, J., did not sit; the others concurred.