Merrimack
No. 78-156

### THE MANCHESTER BANK

v.

### INDUSTRIAL DEVELOPMENT AUTHORITY,
### STATE OF NEW HAMPSHIRE

January 12, 1979

*Sheehan, Phinney, Bass & Green* (*Stephen E. Weyl* orally), for the plaintiff.

*Thomas D. Rath*, attorney general (*David W. Marshall*, assistant attorney general, orally), for the defendant.

DOUGLAS, J.   This is a contract action brought by the Manchester Bank against the Industrial Development Authority (IDA). The plain-

tiff bank claims that the defendant IDA failed to make full payment under the terms of its guaranty. All questions of law raised by the pleadings, exhibits, and agreed statement of facts were reserved and transferred to this court without ruling by *Keller*, C.J.

On November 7, 1973, the bank agreed to loan Tricnit Industries, Inc. (Tricnit) $211,000 subject to IDA's guaranty of part of the loan. The loan was also protected by a loan agreement, a promissory note, and a mortgage on real property owned by Tricnit. There were two limitations to IDA's liability under the guaranty. The first stated that IDA's obligation is "equal but limited to" 28.4 percent of the unpaid balance of the mortgage principal. The second stated that "the guaranty shall not apply to unpaid interest or to any sums advanced by the mortgagee for taxes, insurance or other charges." The guaranty agreement also provides that in the event of default by Tricnit, the bank is to look first to the mortgaged property for the satisfaction of its debt. Specifically, section seven, paragraph three of the guaranty provided that if the "net proceeds" from the foreclosure sale, when added to the amount of the guaranty, exceeded the "balance due the mortgagee," then the excess was to be deducted from the amount of the guaranty.

In February 1975, Tricnit defaulted on the loan. The principal balance of the mortgage remaining was $203,761.38. The bank foreclosed on the mortgaged property and recovered $155,000 from the sale. After subtracting $19,481.08 in conservation and foreclosure costs, the total deficiency was $68,242.46. The bank claims that IDA must therefore pay the maximum under the guaranty, $57,868.23 (28.4 percent of $203,761.38). IDA argues that it owes $48,761.38. IDA reached this figure by subtracting the amount received from the sale of the mortgaged property ($155,000) from the balance of the unpaid principal ($203,761.38). This was a shorthand calculation under section seven, paragraph three of the guaranty agreement. IDA excluded the conservation and foreclosure costs in its determination of "net proceeds."

The bank argues that IDA must include these costs in its determination of "net proceeds" as that term is used in section seven, paragraph three of the guaranty. It concludes that subtracting these costs from the proceeds of the sale results in maximum liability under the terms of the guaranty, because the total deficiency would then exceed the maximum guaranty. We disagree with this analysis. Net proceeds from a sale of mortgaged property equal the gross proceeds minus the costs of sale. *See, e.g., Smith v. Smith*, 56 Wash. 2d 1, 351 P.2d 142 (1960). In this instance, the costs of sale include the

advertising and auctioneer fees of $2,109.29; these are the only costs directly attributable to the sale. This definition of the term "net proceeds" is consonant with the exclusionary language used in sections one and seven of the guaranty. These sections state in part that "the guaranty shall not apply to unpaid interest or to any sums advanced by the mortgagee for taxes, insurance or other charges." We hold that the bank cannot recover the $17,371.79 not directly attributable to the sale.

█ █ The bank argues alternatively that IDA has guaranteed its *total* deficiency, including the costs of conservation and foreclosure. The term "deficiency" is defined in its loan agreement with Tricnit, in which Tricnit is responsible for costs incurred incident to foreclosure. The bank equates that term "deficiency" with the term "balance due the mortgagee" in section seven, paragraph three of the guaranty. We interpret the obligation of a guarantor under contract as " 'that which the fair import of the language used imposed on him' . . . ." *Brown Durrell Co. v. Belisle*, 83 N.H. 516, 516, 144 A. 786, 786 (1929) (citations omitted). The intentions of the parties to a contract are determined from the agreement taken as a whole. *Kilroe v. Troast*, 117 N. H. 598, 376 A.2d 131 (1977). If the bank's definition of the phrase "balance due the mortgagee" is accepted, section seven, paragraph three would be inconsistent with section seven, paragraph four, which states that if the net proceeds are greater than or equal to the balance of the unpaid principal, the guaranty is void. Using the bank's definition, a default by the mortgagor could result in a void guaranty under paragraph four but remain a viable obligation under paragraph three. We therefore hold that the phrase "balance due the mortgagee" is equivalent to the phrase "balance of the unpaid principal." IDA is liable only for the amount remaining after the net proceeds (gross proceeds less costs directly attributable to the sale) are subtracted from the balance of the unpaid principal, exclusive of unpaid interest or any sums advanced by the mortgagee bank for taxes, insurance or other charges. IDA has paid $48,761.38 to the bank, and owes only an additional $2,109.29.

*Remanded.*

BOIS, J. did not sit; the others concurred.