Alumax Aluminum Corporation, Respondent, v Norstar Bank, N. A., Appellant.

Fourth Department, June 7, 1991

APPEARANCES OF COUNSEL

*Jaeckle, Fleischmann & Mugel (Mitchell J. Banas* and *Gary M. Sterman* of counsel), for appellant.

*Grosse, Rossetti, Chelus & Herdzik, P. C. (Jeanne Vezina* and *Thomas J. Speyer* of counsel), for respondent.

**OPINION OF THE COURT**

DENMAN, J.

In this action for conversion of a check on which plaintiff was 1 of 2 named payees, defendant depositary bank appeals from the court's award of summary judgment to plaintiff for $42,058.33, the amount of the check, plus interest, costs and disbursements. Defendant's primary contention, and the only one we need address, is that it cannot be held liable in conversion on the facts presented here. We agree.

Sevenson Hotel Associates constructed a hotel in Niagara Falls and engaged the services of MAF Systems, Inc. as a roofing contractor on the job. MAF ordered construction materials from plaintiff, Alumax Aluminum Corporation. Because MAF was unknown to plaintiff, Sevenson agreed to pay for the materials supplied by plaintiff by issuing checks jointly payable to plaintiff and MAF. A number of checks made payable to MAF and plaintiff were properly received by plaintiff and collected against Sevenson's account at M & T Bank without incident.

This dispute arose when plaintiff failed to receive payment for a final shipment of roofing materials worth $42,058.33. After commencing a separate action against Sevenson, plaintiff learned that Sevenson had issued a check on March 30, 1988 in that amount drawn on its account at M & T and made payable to MAF "and" plaintiff. MAF had received that check, endorsed it, and deposited it in its account at defendant Norstar Bank, N. A. Norstar had credited MAF's account in the amount of $42,058.33, then sent the check through the collection process. Sevenson's bank, M & T, had dishonored the check and returned it to defendant unpaid, citing the lack of endorsement by plaintiff. Thus, Sevenson's checking account has never been charged for the draft in dispute. MAF withdrew the $42,058.33 from its account at Norstar before the bank could reverse the credit. It appears that MAF defaulted on the job and is now insolvent. Although Norstar has never been paid on the check, it has relinquished physical possession of it to plaintiff.

Plaintiff commenced this action against defendant, alleging that the bank converted the check proceeds by improperly honoring the check when it was presented by its depositor without the endorsement or authorization of plaintiff. On the parties' cross motions for summary judgment, the court granted plaintiff's motion and denied defendant's. The court held that defendant had violated the Uniform Commercial Code by accepting the improperly endorsed check, that defendant had not acted in accordance with reasonable commercial standards, and that plaintiff was in fact damaged. The court found it irrelevant that M & T had refused to pay the check on presentment and that Sevenson's underlying obligation remained undischarged.

We agree with the court's conclusion that defendant should not accepted the check from MAF for deposit in the absence of proper endorsement and negotiation by plaintiff, the joint payee (see, UCC 3-116 [b]). To conclude that the bank should not have accepted the check from MAF, however, does not mean that it is liable in conversion to plaintiff. UCC 3-419 (3), upon which plaintiff relies, provides: "Subject to the provisions of this Act concerning restrictive indorsements [not applicable herein] a representative, including a depositary or collecting bank, who has in good faith and in accordance with the reasonable commercial standards applicable to the business of such representative dealt with an instrument or its proceeds on behalf of one who was not the true owner is not liable in conversion or otherwise to the true owner beyond the amount of any *proceeds remaining* in his hands" (emphasis supplied). The most reasonable interpretation of that statute is that a nonnegligent depositary bank that has accepted a check from someone other than the true owner is not liable to the true owner unless some or all of the proceeds of the check remain in its hands, in which case the bank is liable up to the amount it holds. On the other hand, where the depositary bank has been negligent in dealing with a check, it is liable for any damage to the true owner even if the check proceeds *no longer* remain in its hands.

Applying that interpretation of the statute, we conclude that plaintiff has no valid cause of action for conversion where, as here, the defendant bank has never received the proceeds of the check and plaintiff consequently has not been damaged by defendant's conduct. UCC 3-419 creates conversion liability against a depositary bank in favor of a payee of a lost or stolen check where the check has been cashed by a

forger or thief and sent through the collection process (see, White and Summers, Uniform Commercial Code § 15-4). That, however, is not this case. Contrary to the situation contemplated by UCC 3-419, the check in this case was not paid by the drawee bank, which dishonored the check, returned it unpaid, and did not debit the account of the drawer, Sevenson. Although the statute does not expressly require that the check be collected before it may be the subject of a conversion action, the requirement of payment or collection is implicit in the statutory references to "proceeds" (see, UCC 3-419 [3]). We hold that, in order to be liable for conversion under the statute, the depositary bank must, at some point, have received the proceeds of the wrongfully accepted check.*

Statutory analysis aside, it is axiomatic that, in order to maintain an action for conversion, a plaintiff must have been damaged by the conduct of the defendant. In the circumstances presented here, plaintiff has not been damaged. Because the check has never been collected against Sevenson's account, Sevenson remains liable to plaintiff on both the check and the underlying obligation (see, UCC 3-413 [2]; 3-804; see generally, White and Summers, Uniform Commercial Code §§ 15-2, 15-4; cf., State of New York v Barclays Bank, 76 NY2d 533, 537), and plaintiff consequently remains in the same position it was in before the check was accepted by defendant. Here, Norstar's conduct has damaged no one but itself. In seeking to impose liability against defendant on a theory of conversion, plaintiff in effect seeks to impose a double liability against defendant. If plaintiff were to prevail, defendant, which has already paid $42,058.33 to MAF, would be required to pay another $42,058.33 to plaintiff, while Sevenson would not have paid for the materials supplied by plaintiff. In sum, defendant did not convert any money or claim belonging to plaintiff. Defendant is the victim of MAF's conversion of the sum incorrectly credited to MAF's account. As the party that dealt with the depositor, defendant perhaps should bear that loss, but it should not bear that same loss twice.

Plaintiff is not without a remedy, inasmuch as it can sue Sevenson either on the check or on the underlying obligation (see, State of New York v Barclays Bank, 76 NY2d 533, 537). Relegating plaintiff to that remedy "would give full effect to the UCC's loss allocation scheme by furthering the aim of

---

* However, depending upon whether the bank was negligent, it is not essential that those proceeds remain in its hands (UCC 3-419 [3]).

placing ultimate responsibility on the party at fault through an orderly process in which each defendant in the transactional chain may interpose the defenses available to it" *(State of New York v Barclays Bank, supra,* at 538). Relegating plaintiff to its claim against Sevenson, far from promoting circuity of action, would actually be the most economical practice. If plaintiff prevails against Sevenson, the liabilities will have been placed exactly where they should be. Sevenson will have paid plaintiff for the materials used on its project, and defendant can recover against MAF either on the deposit contract or on various common-law theories, or, if it cannot recover from the insolvent MAF, defendant will properly bear the consequences of its wrongful acceptance of the check. On the other hand, to allow plaintiff to recover directly against defendant would create a serious anomaly. Plaintiff would be made whole, defendant would be subject to double liability, and Sevenson would not have paid for the materials. We believe that illustrates the unfairness of permitting plaintiff to maintain a conversion claim directly against defendant in these circumstances.

Accordingly, the order granting summary judgment to plaintiff should be reversed and summary judgment should be granted to defendant dismissing the complaint.

DILLON, P. J., LAWTON, LOWERY and DAVIS, JJ., concur.

Judgment unanimously reversed, on the law, with costs, motion denied, cross motion granted and complaint dismissed.