ATHR v. Hutchinson                    CV-93-467-M    10/12/95

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


ATHR, Inc.,
        Plaintiff,

        v.                                        Civil No. 93-467-M

Hutchinson, Smith, Nolt & Associates, Inc.,
        Defendant.


O R D E R


Plaintiff, ATHR, Inc., brings this action seeking reformation of an asset purchase and sale agreement (the "Contract"), damages for defendant's alleged breach, and a declaration of the parties' respective obligations under the Contract.  Defendant, Hutchinson, Smith, Nolt & Associates, Inc., denies breaching the Contract and counterclaims for damages allegedly sustained as a result of its detrimental reliance upon material misrepresentations knowingly made by plaintiff and its agents.

Pending before the court are plaintiff's motion for summary judgment on Count II (breach of contract) and defendant's motion for summary judgment on all counts.  For the reasons set forth

below, plaintiff's motion for partial summary judgment is granted and defendant's motion for summary judgment is denied.

## Background

Plaintiff, ATHR, Inc. ("Seller"), is a closely held New Hampshire corporation, formerly known as Hutchinson, Smith & Associates. Harold Rimalover and Andre Turenne are its principal officers and sole shareholders. Defendant, Hutchinson, Smith, Nolt & Associates ("Purchaser"), is a New York corporation. Gregg Nolt is its president and a former employee of Felker Bros. Corp. ("Felker").

In 1990, Hutchinson, Smith & Associates (the "Company") acted as the exclusive northeastern sales representative for Felker, selling stainless and alloy steel pipe and fittings manufactured and/or distributed by Felker. The Company's territory, its obligations as a sales representative, and its commission schedule were outlined by Felker in a "letter of appointment" dated June 14, 1985.

In 1990, the parties began negotiating the purchase and sale of the Company's assets. On October 4, 1990, they executed the

Contract, by which Purchaser agreed to acquire the assets of the Company for Three Hundred Thirty-Seven Thousand Dollars ($337,000.00).  Seller maintains that initially the full purchase price (less earnest money and initial cash payments) was to be evidenced by a single promissory note.  Early drafts of the Contract demonstrate that this was the parties' original intention.  Subsequently, however, Purchaser requested that the acquisition price be allocated in a manner that provided more favorable tax treatment.  Schedule C of the Contract reflects the parties' decision to allocate the purchase price as follows: (i) $150,000.00 for a covenant from Seller not to compete with Purchaser; (ii) $160,000.00 for consulting services to be rendered by Rimalover and Turenne to Purchaser; (iii) $20,000.00 for earned but unpaid commissions owed to the Company; (iv) $5,000.00 for the trade name of Hutchinson, Smith & Associates; (v) $1,000.00 for customer lists; and (vi) $1,000.00 for the Company's good will.

The parties then divided Purchaser's obligations to pay Seller into three distinct categories.  The first, representing the payment for commission credit, good will, trade name, and customer lists, is represented by a promissory note payable in

3

the amount of $27,000.00. Contract, Schedule D. The second, expressed as consideration for the covenant not to compete, is set forth in paragraph 3.B. of the Contract, which establishes a payment schedule under which Purchaser was obligated to pay Seller $150,000.00, in monthly installments of $1,250.00. Finally, the third obligation is described in paragraph 3.C. of the Contract, which sets forth a schedule under which Purchaser was obligated to pay Seller $160,000.00, in monthly installments of $1,333.34, as compensation for consulting services to be rendered by Rimalover and Turenne. Only the $27,000.00 obligation is represented by a promissory note; the remaining financial obligations are set forth in the Contract.

After the parties signed the Contract, Felker issued to Purchaser a letter of appointment dated December 5, 1990, reaffirming its status as its representative for Territory 25. That letter of appointment is, in all material respects, identical to the one under which the Company had operated since 1985. Subsequently, Felker divided its operation into a "manufacturing division" and a "fabricated products division." On February 24 and December 8, 1992, Felker issued new letters of appointment to the Company, making it Felker's Territory 25

4

manufacturer's representative for both the manufacturing and fabricated products divisions, but reducing the commissions to be paid to the Company. The parties do not appear to dispute the fact that Purchaser has held a continuous appointment as Felker's Territory 25 manufacturer's representative since the Contract was executed on October 4, 1990, and both acknowledge that, in 1992, Felker reduced the rate at which it paid commissions to the Company.

By letter dated March 3, 1993, Nolt contacted Turenne and Rimalover and requested relief from Purchaser's financial obligations to Seller:

> I respectfully request that [Seller] consider providing some relief of debt owed by [Purchaser]. This request is the result of lowered commission rates in two (2) new contracts issued by Felker Bros. Corp. for manufactured products and custom fabricated products.

On April 22, 1993, approximately four months after Felker issued the most recent letter of appointment and after Seller had apparently refused to grant Purchaser's request for relief from its obligations, Purchaser notified Seller that it considered Felker's recent letters of appointment to constitute termination of the initial letter of agreement. Accordingly, Purchaser

5

asserted that, pursuant to paragraph 18 of the Contract, it was no longer obligated to make any payments for the covenant not to compete or the consulting services:

> As you may know Felker Bros. Corp., hereinafter referred to as Felker, has unilaterally terminated its initial letter of appointment with [Purchaser]. This occurred without wrongful conduct on behalf of [Purchaser].
>
> Pursuant to paragraph 18 of the agreement between [Purchaser] and yourselves, you agreed to forgive any obligation to pay pursuant to the covenant not to compete and/or the advisory and consulting agreement in just this situation. Therefore [Purchaser] no longer owes you any monies on such agreements. [Purchaser] does acknowledge however that since it has accepted another relationship with Felker Bros. as set forth in paragraph 19a of this agreement, it is not entitled to forgiveness of the promissory note. Therefore [Purchaser] shall honor said promissory note. Accordingly a check in the sum of $58.33 being the monthly payment for May of 1993 is enclosed herewith.

Letter of Attorney Richard Herrmann, Jr., dated April 22, 1993. Shortly after receiving this letter, Seller filed the pending action against Purchaser.

## Applicable Law

I.   Standard of Review.

Summary Judgment is appropriate when the record reveals "no genuine issue of material fact and . . . the moving party is

6

entitled to a judgement as a matter of law." Fed.R.Civ.P. 56(c).
In ruling on the party's motion for summary judgment, the court
must "view the entire record in the light most hospitable to the
party opposing summary judgment, indulging all reasonable
inferences in that party's favor." Griggs-Ryan v. Smith, 904
F.2d 112, 115 (1st Cir. 1990).

The moving party has the burden of demonstrating the absence
of a genuine issue of material fact for trial. Anderson v.
Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). If the moving
party carries its burden, the party opposing the motion must set
forth specific facts showing that there remains a genuine issue
for trial, demonstrating "some factual disagreement sufficient to
deflect brevis disposition." Mesnick v. General Electric Co.,
950 F.2d 816, 822 (1st Cir. 1991), cert. denied, 504 U.S. 985,
(1992). See also Fed.R.Civ.P. 56(e). This burden is discharged
only if the cited disagreement relates to a genuine issue of
material fact. Wynne v. Tufts University School of Medicine, 976
F.2d 791, 794 (1st Cir. 1992), cert. denied, 113 S.Ct. 1845
(1993). "In this context, 'genuine' means that the evidence
about the fact is such that a reasonable jury could resolve the
point in favor of the nonmoving party [and] 'material' means that

7

the fact is one that might affect the outcome of the suit under the governing law." United States v. One Parcel of Real Property with Bldgs., 960 F.2d 200, 204 (1st Cir. 1992) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

II.  Contract Interpretation.

A district court sitting in a diversity jurisdiction case must apply the substantive law of the forum state.[1] American Title Ins. Co. v. East West Financial Corp., 959 F.2d 345, 348 (1st Cir. 1992) (citing Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938)).  Under New Hampshire law, the interpretation of a contract involves mixed questions of law and fact.  While the interpretation of unambiguous contractual provisions presents a question of law, the interpretation of ambiguous provisions presents a question of fact.  And, as the court of appeals for this circuit has noted, "the general rule [in New Hampshire] is that whether a contract is clear or ambiguous is a question of law . . .  If the contract is deemed ambiguous, then the intention of the parties is a question of fact." In re Navigation Technology Corp., 880 F.2d 1491, 1495 (1st Cir. 1989)

_____

[1]  The Contract's choice of law provision also supports application of New Hampshire law.  Contract, at para. 26.

8

(citations omitted).  Nevertheless, in limited circumstances the court may resolve an ambiguous contract provision, "if, after considering all of the evidence, including extrinsic evidence not weighed in construing unambiguous contract language, a rational finder of fact could resolve the ambiguity in only one way." McCrory v. Greenerd Press & Machine, No. 92-179-B, slip op. (D.N.H. December 17, 1993) (citing Gamble v. Univ. of New Hampshire, 136 N.H. 9, 14-15 (1992)).

The New Hampshire Supreme Court has repeatedly held that a reviewing court should interpret a contract to reflect the intention of the parties at the time it was made.  R. Zoppo Co. v. Dover, 124 N.H. 666, 671 (1984); Trombly v. Blue Cross/Blue Shield, 120 N.H. 764, 770 (1980); Erin Food Servs. v. 688 Properties, 119 N.H. 232, 235 (1979).  The intent of the parties is to be judged objectively, Logic Assocs. v. Time Share Corp., 124 N.H. 565, 572 (1984), and the contract language is to be given "a meaning that would be attached to it by a reasonable person." Kilroe v. Troast, 117 N.H. 598, 601 (1977).

In determining the intent of the parties, the court must "consider the situation of the parties at the time of their

9

agreement and the object that was intended thereby, together with all the provisions of their agreement taken as a whole." R. Zoppo Co., 124 N.H. at 671 (citations omitted). However, the court must be careful to focus upon "objective or external criteria rather than . . . unmanifested states of mind of the parties." Tentindo v. Locke Lake Colony Ass'n, 120 N.H. 593, 598-99 (1980).

## Discussion

The parties agree that the Contract is valid and binding. They also agree that they regarded the rights represented by the "letter of appointment" from Felker to be a "material portion of the value of the assets to be purchased." Contract, at para. 17. The sole area of disagreement relates to paragraph 18 of the Contract, which purports to set forth the conditions under which Purchaser's payment obligations would be forgiven. The final version of the Contract, as signed by the parties, provides in part:

> 17. CHANGED CIRCUMSTANCES: The parties hereto
>     acknowledge that the Felker Bros. Corp. agreement
>     with SELLER, pursuant to a "letter of appointment"
>     dated June 14, 1985, and the rights thereunder,
>     represents a material portion of the value of the
>     assets to be purchased. Accordingly, in the event
>     the territory presently defined in said letter of

10

appointment is materially changed prior to the closing, or Felker Bros. Corp. determines not to extent a "letter of appointment" to PURCHASER, PURCHASER shall have the right to terminate this agreement. In such event, PURCHASER shall give notice of termination of the Agreement to SELLER and any monies paid as a deposit shall be returned to the PURCHASER and neither party shall have any further rights against the other.

18. <u>FORGIVENESS OF NOTE</u>: In the event Felker Bros. Corp. cancels, in total, its "letter of appointment" referred to in Paragraph 17 above, for reasons other than territory mismanagement by the PURCHASER, determined in the sole discretion of Felker Bros. Corp., the SELLER agrees to forgive the balance with respect to the Promissory Note provided in Paragraph 3b hereof then due and any obligation to pay pursuant to the covenant not to compete and/or the advisory and consulting agreement. Notwithstanding the foregoing, PURCHASER shall not be entitled to forgiveness of the Promissory Note if: (a) PURCHASER accepts employment or any other relationship, employment or otherwise, with Felker Bros. Corp. (other than as Manufacturer's Representative for what is currently known as Territory 25 as provided in the current "letter of appointment"); or (b) PURCHASER voluntarily disassociates himself from Felker Bros. Corp.; or (c) violates the conditions of the "letter of appointment." This provision shall survive closing.

Contract, paras. 17 and 18. The parties disagree on two points.

First, they dispute the meaning to be ascribed to the phrase "In

the event Felker Bros. Corp. cancels, in total, its `letter of

appointment' referred to in Paragraph 17 above." Purchaser

claims that condition has been met and, therefore, it is entitled

11

to stop making the bulk of its payments under the Contract. Seller disagrees and argues that by stopping such payments, Purchaser has breached the Contract.

The parties also disagree with regard to the intended effect of the second sentence of paragraph 18 and whether it was purposefully drafted to create a distinction between forgiveness of the promissory note and forgiveness of Purchaser's financial obligations arising from the covenant not to compete and consulting agreement. Purchaser argues that this sentence accurately reflects the parties' intention. Seller disagrees and claims that this provision contains a typographical error and/or an inadvertent omission of material language. It asks the court to reform the language to reflect what it claims was the parties' true intention.

I.   Did Felker "Cancel, in Total," the Letter of Appointment?
Purchaser contends that when Felker issued new letters of appointment, each of which "superseded all prior and contemporaneous . . . agreements," it "cancelled in total" the original, June 14, 1985, letter of appointment referenced in the Contract. Accordingly, pursuant to the first sentence of

12

paragraph 18, Purchaser asserts that it is entitled to forgiveness of its obligations under the covenant not to compete and the consulting agreement. Consistent with this position, however, it "acknowledges" that it remains obligated on the promissory note, pursuant to the provisions of the second sentence of paragraph 18 which purportedly exempt forgiveness of the promissory note under certain conditions.

Seller responds by arguing that the parties did not intend to forgive Purchaser's obligations merely because Felker issued a new superseding letter of appointment. Instead, it argues that the parties obviously were concerned about providing Purchaser relief if, and only if, the Company completely lost its status as a Felker sales representative.

Seller points to several supporting facts. First, it notes the distinction between paragraph 17, which was designed to allow Purchaser to avoid the Contract if Felker should "materially change" the letter of appointment prior to closing, and paragraph 18, which allows forgiveness of some (or all) of Purchaser's obligations if, after closing, Felker "cancels, in total, its letter of appointment." Seller claims that use of the phrase

13

"cancels in total" was purposeful and intended to make Purchaser's debt forgiveness contingent upon complete cancellation of Felker's appointment of the Company as a manufacturer's representative. It also claims that the second sentence of paragraph 18 was intended to make such a contingency crystal clear: Purchaser's obligations were not to be forgiven if it "accept[ed] employment or any other relationship, employment or otherwise, with Felker." Contract, para. 18. Seller also points to Purchaser's <u>post</u>-closing conduct in support of its reading of the disputed phrase.[2]

---

[2] Seller notes that Purchaser did <u>not</u> assert his alleged right to discontinue his obligations under the consulting agreement and covenant not to compete after Felker issued the first letter of appointment, dated December 5, 1990. And, following Felker's issuance of the letters of appointment in 1992, Purchaser did not immediately assert its claimed right of debt forgiveness; instead, Nolt first sought financial concessions and/or debt restructuring from Seller as "a result of lowered commission rates" to be paid by Felker. April 22, 1993 letter from Nolt to Seller. Purchaser did not claim a right to stop payments on the covenant not to compete and consulting agreement until: (i) after Seller apparently denied Nolt's request for some restructuring of Purchaser's obligations; and (ii) more than 14 months after Felker's February 24, 1992, letter of appointment and almost 4 months after the December, 1992, letter of appointment.

From this apparent period of inaction, Seller argues that Purchaser's true understanding of the Contract can be distilled: Purchaser did not truly believe that Felker's new letters of appointment triggered the provisions of paragraph 18, but instead recognized that its financial obligations continued. Seller argues that ultimately Purchaser's reliance upon his alleged

14

However, because the court finds that the disputed language is <u>not</u> ambiguous, it need not consider such extrinsic evidence in an effort to resolve any ambiguity.

Viewing the language of the Contract as a whole, considering the situation of the parties when the contract was formed, and giving the language of the Contract its common meaning, the court finds that the phrase "cancels, in total, its letter of appointment" is not ambiguous. In order for the disputed language to be "ambiguous," there must be different plausible interpretations of that language which are consistent with the parties' objectively manifested intentions. Here, there is plainly no ambiguity.

The reference in paragraph 18 to the cancellation, in total, of Felker's "letter of appointment" does not describe the June 14, 1985, letter itself; rather it refers to a generic letter of appointment (or, more accurately, the business relationship described by such letters), the parties' concern being that

_____

right to cease payments under the consulting agreement and covenant not to compete is the product of a tortured reading of the Contract, borne of financial hardship and inability to honor the obligations of the Contract.

15

Purchaser not be bound under the Contract if Felker revoked its status as a sales representative.

The specific document memorializing the relationship between Felker and the Company is unimportant; the critical asset of the Company was the agreement with Felker itself. The Contract makes this clear: "the Felker Bros. Corp. agreement with SELLER, . . . and the rights thereunder, represents a material portion of the value of the assets to be purchased." Contract, para. 17 (emphasis added). It is equally clear that, contrary to Purchaser's thesis, the parties actually anticipated that Felker would issue subsequent letters of appointment. See Contract, para 17 (giving Purchaser right to avoid contract if "Felker Bros. Corp. determines not to extend a `letter of appointment' to [Purchaser]").

In light of this, it is apparent that the parties did not intend to relieve Purchaser of its financial obligations under the Contract merely because Felker, as expected, extended new letters of appointment. And, because the parties do not dispute that Felker has not "cancelled, in total," its agreement with the Company (under which the Company acts as an exclusive sales

16

representative in a designated region), Purchaser is not entitled to forgiveness of its obligations under the Contract.

Purchaser's reading of the Contract is wholly inconsistent with its plain and unambiguous language. To interpret the Contract in the manner advocated by Purchaser would allow it to retain the entire benefit of its bargain (i.e., acquisition of the Company's assets, including its relationship with Felker) while avoiding its obligation to pay for those assets when Felker issued the anticipated new letters of appointment, either reaffirming the Company's status a sales representative on the same terms or modifying slightly the conditions under which it acted as a sales representative. Such an interpretation of the Contract would be illogical and unreasonable. Most importantly, however, it is contrary to the objective manifestation of intent clearly expressed by the parties. Seller is, therefore, entitled to judgment as a matter of law with regard to Count II.

II. Reformation.

Seller argues that the second sentence of paragraph 18 is a vestige of earlier drafts of the Contract, which was inadvertently not updated when the final version was prepared.

17

Seller claims that <u>both</u> the first and second sentences of paragraph 18 were intended to relate to the circumstances under which <u>all</u> of Purchaser's obligations would be forgiven. It claims that when the purchase price was divided into three components (i.e., a relatively small promissory note and two substantial payment schedules), the language of paragraph 18 was not properly amended and now makes an unintended distinction between forgiveness of the promissory note and forgiveness of the remaining financial obligations. It claims that Purchaser is relying upon this false distinction to reap a benefit which was never intended.

In support of its position, Seller points to the language of an earlier draft of the Contract, which provides:

> <u>FORGIVENESS OF NOTE</u>: In the event Felker Brothers Corporation cancels, in total, its "letter of appointment" referred to in paragraph 17 above, . . . the Seller agrees to forgive the balance with respect to the Promissory Note provided in paragraph 3b hereof. Notwithstanding the forgoing, PURCHASER shall not be entitled to forgiveness of the Promissory Note if . . .

Draft of the Contract, dated August 22, 1990, at para. 18. When this draft was prepared, the parties had planned to evidence Purchaser's obligation to pay the full $337,000.00 purchase price in a single promissory note. Accordingly, the first and second

18

sentence were to be interpreted together, specifically outlining and limiting the circumstances under which <u>all</u> of Purchaser's obligations would be forgiven. Seller argues that if the Contract, as executed, were to accurately represent the intention of the parties, the second sentence of paragraph 18 would have read as follows:

> Notwithstanding the forgoing, PURCHASER shall not be entitled to forgiveness of the Promissory Note **and the obligations to pay pursuant to the covenant not to compete and the advisory and consulting agreement** if: (a) . . .

Affidavit of Albert Cirone, Esq. (former counsel to Seller), at para. 10. Seller claims that such language would have prevented Purchaser from creating the unintended distinction between forgiveness of the promissory note and forgiveness of the obligations created by the covenant not to compete and consulting agreement. Succinctly stated, Seller argues that it <u>never</u> intended to forgive <u>any</u> of Purchaser's obligations if, despite termination of the Company's status as Territory 25 sales representative, it maintained an ongoing relationship with Felker, voluntarily terminated that relationship, or violated the terms of the Contract. It claims that the disputed language in paragraph 18 is the product of a mutual mistake and should,

19

therefore, be reformed.  Purchaser maintains that, at best, the language set forth in paragraph 18 is the product of a unilateral mistake by Seller.  Accordingly, Purchaser argues that reformation is not a remedy available to Seller.

Absent fraud, reformation of a contract requires proof of mutual mistake.  Midway Excavators v. Chandler, 128 N.H. 654, 658 (1986).  In the case of unilateral mistake, the remedy is rescission, not reformation.  Id.  And, with regard to reformation, the New Hampshire Supreme Court has stated that:

> "The law is well settled in this jurisdiction that reformation may be granted . . . where the instrument fails to express the intention which the parties had in making the contract which it purports to contain" and that "parol evidence of mistake in reduction of the agreement of the parties to writing may be received, not for the purpose of varying the written instrument, but for the purpose of establishing the mistake and correcting the instrument."

McCabe v. Arcidy, 138 N.H. 20, 27 (1993) (quoting Gagnon v. Pronovost, 97 N.H. 58, 60 (1951)).  Moreover, reformation is appropriate only:

> when the evidence is clear and convincing that (1) there was an actual agreement between the parties, (2) there was an agreement to put the agreement in writing and (3) there is a variance between the prior agreement and the writing.

Erin Food Servs. v. 688 Properties, 119 N.H. at 237 (emphasis in original).

Here, the dispute concerns the third requisite element: the parties vigorously disagree as to whether the final, executed version of the Contract accurately represents their agreement. Plainly, this disputed material fact must be resolved by the trier of fact.  Summary judgment is, therefore, unavailable as to Count I of the complaint, Seller's request for reformation.

Likewise, summary judgment is inappropriate with regard to Count III of the complaint, by which Seller seeks a declaration of the parties rights and obligations under the Contract.  Until the question of reformation is resolved, the court cannot conclusively determine the parties' respective rights and obligations under the Contract.

## Conclusion

For the forgoing reasons, Seller's motion for partial summary judgment (Count II) (document no. 15) is granted and Purchaser's motion for summary judgment (document no. 19) is denied.

21

SO ORDERED.

_____
Steven J. McAuliffe
United States District Judge

October 12, 1995

cc:  Benette Pizzimenti, Esq.
     Mark D. Wiseman, Esq.
     Frederick B. Galt, Esq.