Rockingham
No. 99-006

FAITH R. BURSEY

v.

CFX BANK, PETER J. BAXTER, PRESIDENT

*July 5, 2000*

*Dorothy F. Silver*, of Manchester, by brief and orally, for the plaintiff.

*Lane and Bentley, P.C.*, of Keene (*Michael P. Bentley* on the brief and orally), for the defendant.

DALIANIS, J. This case involves two separate transactions with CFX Bank. The plaintiff, Faith R. Bursey, appeals a decision of the Superior Court (*Coffey*, J.) after a bench trial that the defendant, CFX Bank, did not convert or act negligently with respect to certain insurance proceeds. CFX Bank cross-appeals, contending that the superior court erred in finding that it converted certain funds and acted negligently with regard to a second transaction. We reverse and remand both decisions, addressing CFX Bank's cross-appeal first.

## I. Transaction One — The Fidelity Checks

In 1991, the plaintiff filed a libel for divorce against her husband, Arthur H. Bursey, Jr. (Bursey). The parties jointly held two accounts with Fidelity Investments (Fidelity) in Boston, Massachusetts, totaling $37,959.81. On October 2, 1992, Bursey redeemed the two accounts, and two checks (Fidelity checks) were issued made payable to:

Arthur H. Bursey, Jr.
Faith R. Bursey.

On June 4, 1993, Bursey opened a passbook savings account — in his name only — at The Valley Bank in Suncook and deposited the Fidelity checks into this account. The Fidelity checks were endorsed only by Bursey. The Valley Bank was acquired by CFX Bank in April 1990, and the two merged on November 15, 1993. Thus, CFX Bank, as successor to The Valley Bank, is the defendant in this case.

On June 14, 1993, Bursey applied for a collateral loan in the amount of $34,000 from CFX Bank and pledged as collateral his passbook savings account containing the Fidelity checks. CFX Bank paid Bursey $34,000 by treasurer's check. That same day, the Fidelity checks were returned to CFX Bank by Fidelity. The reason for the returns is unclear, but appears to have been either due to the lack of endorsement or the stale dates of the checks. CFX Bank requested that Bursey replace the funds, and on June 16, CFX Bank received two wire transfers from Fidelity in the same amount as the returned checks. The wired funds were payable to "ARTHUR H FAITH R BURSEY," followed by the account number. Bursey

subsequently defaulted on his loan, and CFX Bank charged the passbook savings account for the loan balance.

The plaintiff filed suit against CFX Bank, contending that it converted the Fidelity checks and negligently paid them despite her missing endorsement. The superior court agreed, finding that both Bursey's and the plaintiff's endorsements were required on the Fidelity checks and that conversion occurred when CFX Bank accepted the checks without the plaintiff's endorsement.

In its cross-appeal, CFX Bank contends that the superior court erred by: (1) applying RSA 382-A:3-420 (1994) retroactively; (2) finding that a conversion took place even though the Fidelity checks were returned unpaid; (3) failing to apply federal regulations to the electronic transfer of funds that took place after the Fidelity checks were returned unpaid; and (4) awarding the plaintiff the full amount of the Fidelity checks as opposed to one half.

■ The plaintiff and the superior court considered recent amendments to the Uniform Commercial Code (UCC), see RSA 382-A:3-101 et seq. (1994), in particular RSA 382-A:3-420. As CFX Bank correctly notes, RSA 382-A:3-420 was not effective until January 1, 1994, after the dates on which the two disputed transactions occurred. Accordingly, we apply the 1961 version of the UCC because it governed negotiable instruments at the time of the transactions involved. See Barnsley v. Empire Mortgage Ltd. Partnership V, 142 N.H. 721, 723, 720 A.2d 63, 64 (1998).

CFX Bank does not dispute the superior court's finding that because the Fidelity checks were jointly payable to both the plaintiff and Bursey, both signatures were required to enforce the checks. See RSA 382-A:3-116(b) (1961) (repealed, amended, and reenacted as RSA 382-A:3-110(d) (Supp. 1993) (effective January 1, 1994)); Litchfield v. Pfeffer, 116 N.H. 485, 487, 363 A.2d 413, 415 (1976). Nor is it disputed that Bursey alone endorsed the checks and deposited them into an account bearing only his name. Instead, CFX Bank disputes whether the checks were converted under RSA 382-A:3-419(1)(c) (1961) (repealed, amended, and reenacted as RSA 382-A:3-420 (Supp. 1993) (effective January 1, 1994)).

■ RSA 382-A:3-419 provides, in pertinent part, that "[a]n instrument is converted when . . . it is paid on a forged indorsement." A missing endorsement is equivalent to a forged endorsement for purposes of RSA 382-A:3-419(1)(c). See GMAC v. Abington Cas. Ins. Co., 602 N.E.2d 1085, 1089 n.8 (Mass. 1992). See generally 6A R. ANDERSON, UNIFORM COMMERCIAL CODE § 3-419:215, at 157 (3d ed. 1998). Thus, the only question remaining as to whether

the Fidelity checks were converted is whether they were in fact "paid."

The superior court ruled that CFX Bank converted the Fidelity checks when it accepted them for deposit from Bursey. While we agree that CFX Bank should not have accepted the Fidelity checks from Bursey without the plaintiff's endorsement, *see True v. Fleet Bank-NH*, 138 N.H. 679, 681, 645 A.2d 671, 672 (1994), we do not agree with the plaintiff that "it is irrelevant that Fidelity returned the checks to CFX Bank."

"The interpretation of a statute . . . is to be decided ultimately by this court. The superior court's legal conclusions and its application of law to fact are ultimately questions for this court." *N.H. Challenge v. Commissioner, N.H. Dep't of Educ.*, 142 N.H. 246, 249, 698 A.2d 1252, 1253 (1997) (quotation and citation omitted).

This is an issue of first impression in New Hampshire. Because a "primary purpose of the UCC is to make uniform the law among the various jurisdictions, we look to other jurisdictions for guidance." *Barnsley*, 142 N.H. at 724, 720 A.2d at 64 (quotation and citation omitted). A majority of States that have addressed this issue have adopted the view that payment under UCC § 3-419 requires more than mere acceptance by the collecting or depository bank. *See, e.g., Kelly v. Central Bank and Trust Co.*, 794 P.2d 1037, 1042 (Colo. Ct. App. 1989) (collecting or depository bank pays check when it credits its customer's account with check proceeds collected from drawee bank); *Franklin v. Safeco Ins. Co. of America*, 737 P.2d 1231, 1236-37 (Or. 1987) (*prima facie* conversion case established against depository bank if bank actually paid instrument in cash on forged endorsement); 6A ANDERSON, UNIFORM COMMERCIAL CODE § 3-419:15-18, at 69-70 (no conversion unless actual payment made). *But see Knight v. First Guar. Bank*, 577 So. 2d 263, 268 (La. Ct. App. 1991) (converting certificates of deposit to money orders constitutes payment of said certificates).

In *Alumax Aluminum Corp. v. Norstar Bank, N.A.*, 572 N.Y.S.2d 133, 134-35 (App. Div. 1991), a check jointly payable to two companies was accepted by a bank even though one endorsement was missing. When the check was sent through the collection process, the drawee bank dishonored the check and returned it for lack of endorsement. *Id.* at 134. The court held that "the depository bank must, at some point, have received the proceeds of the wrongfully accepted check" to be liable for conversion. *Id.* at 135. The plaintiff focuses on the phrase "at some point" and contends that CFX Bank did in fact receive proceeds from the dishonored

checks, either when Bursey received the loan or when Fidelity wired substitute funds. We disagree.

CFX Bank never received proceeds *from* the wrongly accepted Fidelity checks, although it later received wired funds from Fidelity to cover the dishonored checks. That wire transaction, however, was separate from the initial acceptance of the Fidelity checks. If, after the Fidelity checks were returned, Bursey had written a check to cover the dishonored Fidelity checks or provided the funds from some other source, CFX Bank would not have received proceeds *from* the Fidelity checks but rather from another new source. *Cf. Franklin,* 737 P.2d at 1237. The analysis should not differ merely because the source of the covering funds was the same as the source of the original Fidelity checks. Because we hold as a matter of law that the mere acceptance of the Fidelity checks by CFX Bank does not alone constitute conversion under RSA 382-A:3-419(1)(c) and because there was no payment on the Fidelity checks, we reverse the ruling of the superior court on this issue.

## II. Transaction Two — The Insurance Checks

On March 13, 1993, a Florida vacation home owned by the plaintiff and Bursey was damaged by a flood. The plaintiff and Bursey signed a proof of loss form with Auto-Owners Insurance Company. Auto-Owners Insurance issued two checks (insurance checks) payable to "Bursey, Arthur J & Faith R Jr," one check for $43,785.05 and another for $29,000.

On August 26, 1993, Bursey opened a second account with CFX Bank in his name and that of Faith Robin Bursey and deposited the insurance checks into this account. Faith Robin Bursey is the daughter of the plaintiff and Bursey. Only Bursey endorsed the insurance checks before depositing them.

On September 13, 1993, Bursey and his daughter pledged this account for a loan to Bursey in the amount of $65,000. Bursey defaulted, and CFX Bank used the collateral of this second account to satisfy the loan.

The plaintiff contended that CFX Bank was liable in conversion and negligence for accepting the insurance checks for deposit. The superior court ruled that CFX Bank was under no duty to determine that there were two Faith R. Burseys, and thus ruled that CFX Bank did not convert or act negligently by accepting the insurance checks for deposit.

On appeal, the plaintiff argues that the superior court erred by finding that CFX Bank acted in good faith and in accordance with

reasonable commercial practices because: (1) the insurance checks were not endorsed by the plaintiff; (2) CFX Bank's guarantee of the missing endorsement was erroneous under RSA 382-A:4-205 (1961) (repealed and recodified 1994); and (3) the joint account was established without the authority of one of the co-owners of the account.

The insurance checks, like the Fidelity checks, were jointly payable to both the plaintiff and Bursey, and thus both signatures were required to enforce the checks. *See* RSA 382-A:3-116(b); *Litchfield*, 116 N.H. at 487, 363 A.2d at 415. Once again the insurance checks were endorsed only by Bursey, but on this occasion he deposited them into a joint account opened in his name and that of his daughter, Faith Robin Bursey. The superior court concluded that CFX Bank "acted in good faith and in accordance with reasonable commercial standards when it accepted for deposit the two insurance checks . . . [because] CFX Bank was under no duty to determine that there were two Faith R. Burseys, one being the plaintiff and the other being her daughter."

We do not disagree that CFX Bank could reasonably believe the named payee on the insurance checks, Faith R. Bursey, was the same Faith Robin Bursey who was named on the newly opened account. That there are two Faith R. Burseys is, however, irrelevant because we hold that CFX Bank wrongfully accepted the insurance checks without a necessary endorsement.

CFX Bank argues that accepting jointly payable checks for deposit into a joint account with only one payee's endorsement is not wrongful acceptance. We disagree. "The UCC does not provide an exception permitting an instrument payable to two persons to be endorsed by only one person as long as the funds are deposited into a joint . . . account." *Manfredi v. Dauphin Deposit Bank*, 697 A.2d 1025, 1030 n.13 (Pa. Super. Ct. 1997), *appeal denied*, 717 A.2d 1028 (Pa. 1998). *But see Beyer v. First Nat. Bank of Dillon*, 612 P.2d 1285, 1290 (Mont. 1980) (holding bank complied with reasonable commercial standards when bank's good faith not challenged, and check, jointly payable to husband and wife, deposited lacking endorsements to joint account of husband and wife). Thus, CFX Bank's actions are not excused because the insurance checks were deposited into a joint account.

Under RSA 382-A:4-205,

[a] depository bank which has taken an item for collection may supply any indorsement of the customer which is

necessary to title unless the item contains the words "payee's indorsement required" or the like. In the absence of such a requirement a statement placed on the item by the depositary bank to the effect that the item was deposited by a customer or credited to his account is effective as the customer's indorsement.

When it accepted the checks for deposit, CFX Bank supplied the missing endorsement of Faith R. Bursey by stamping the insurance checks "CREDITED TO THE ACCOUNT OF THE WITHIN NAMED PAYEE Absence Of Endorsement Guaranteed The Valley Bank." CFX Bank contends that its use of the stamp to endorse the insurance checks was acceptable because Faith Robin Bursey became a customer of the bank at the time the account was opened on August 26, 1993.

RSA 382-A:4-104(1)(e) (1961) (repealed, amended, and reenacted (Supp. 1993) (effective January 1, 1994)) defines "customer" as "any person having an account with a bank or for whom the bank has agreed to collect items and includes a bank carrying an account with another bank." Thus, if Faith Robin Bursey was a customer of the bank on August 26, 1993, then CFX Bank's stamped guarantee might have been proper. We hold, however, that Faith Robin Bursey was not a customer on August 26, 1993.

■ "Although a bank is privileged in some circumstances to supply a missing endorsement, the only endorsement it can supply is that of *its customer*." *Mid-Atl. Tennis Cts. v. Citizens Bank & Trust Co.*, 658 F. Supp. 140, 143 (D. Md. 1987). CFX Bank argues that when the account was opened on August 26, 1993, both Bursey and Faith Robin Bursey became customers of the bank regarding that account. The record reveals, however, that Faith Robin Bursey was not present when her father opened the joint account and signed neither the new account application form nor the signature card. *See Schoenfelder v. Arizona Bank*, 796 P.2d 881, 887 (Ariz. 1990) (determination of "customer" focuses on relationship of parties to bank, purpose of account, and bank's knowledge of such facts); *Krump Const. Co. v. First Nat. Bank of Nevada*, 655 P.2d 524, 525 (Nev. 1982) (company not customer because it did not initiate interaction with bank by seeking its services in any manner). "A joint payee who does not have an account with the bank and who does not initiate the collection process with the bank is not a 'customer' of the bank. Therefore, the bank cannot supply that payee's indorsement to a check which is presented by the other payee, and the bank will be liable for improper payment of the

item." 7 R. ANDERSON, UNIFORM COMMERCIAL CODE § 4-205:8, at 42 (3d ed. 1995). Because CFX Bank cannot supply the signature of a non-customer depositor, it accepted for deposit a jointly payable check without a necessary endorsement. Thus, we reverse the superior court's ruling that CFX Bank is not liable for conversion under RSA 382-A:3-419(1)(c). *Kelly*, 794 P.2d at 1042. CFX Bank did not, as a matter of law, act in accordance with reasonable commercial standards in handling the insurance checks deposited without the plaintiff's signature. Therefore, the defense in RSA 382-A:3-419(3) (1961) (repealed, amended, and reenacted as RSA 382-A:3-420 (Supp. 1993) (effective January 1, 1994)) is not available to CFX Bank. *Id.* at 1043.

We have reviewed CFX Bank's remaining arguments as to why Faith Robin Bursey was a customer and conclude that they are without merit under the circumstances of this case, and warrant no further discussion. *See Vogel v. Vogel*, 137 N.H. 321, 322, 627 A.2d 595, 596 (1993).

We reverse and remand to the superior court for further proceedings consistent with this opinion.

*Reversed and remanded.*

BROCK, C.J., and HORTON and BRODERICK, JJ., did not sit; GRAY, J., retired superior court justice, and MCHUGH, J., superior court justice, specially assigned pursuant to RSA 490:3, were recused and did not sit or participate in the decision; GROFF, J., sat by special assignment pursuant to RSA 490:3; all who sat concurred.